## Case No. 2,313.

### The CALIFORNIA.

[1 Sawy. 596;[1] 13 Int. Rev. Rec. 166.]

District Court, D. Oregon. April 17, 1871.[2]

SECRETARY OF PILOT COMMISSIONERS — APPOINTMENT — PILOT LICENSE—SIGNATURE OF COMMISSIONERS.

1. Section 2 of the Oregon pilot act, as amended in 1868 [Sess. Laws, 28], provides that the pilot commissioners "may appoint a secretary" and prescribes his duties. Held, that it is the absolute duty of the commissioners to appoint such secretary; and that parol evidence is not admissible to prove the meeting and action of such commissioners concerning the licensing of a pilot, when the act requires a record of the same to be made by the secretary.

[Cited in Re St. Helen Mill Co., Case No. 12,-222.]

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[2] Affirmed on appeal in the circuit court, May 20, 1871. [Case not reported.]

2. A pilot license signed by all three of the commissioners is prima facie evidence of the facts stated in it concerning the examination and licensing of the pilot to whom it purports to be granted; but if only signed by two of such commissioners, the case is otherwise, unless it also appears from the minutes of the board that the matter was acted upon and the license granted at a meeting of the commissioners when all three were present; or such license contains a direct recital or averment of such meeting and action in reference to such license.

3. The power conferred upon a pilot commissioner by the act is a personal trust to be exercised for the public good, and cannot be delegated to another; and therefore one of such commissioners cannot authorize another to sign his name to the license, although it has been agreed or concluded between such commissioners, that such license may be granted.

[In admiralty. Libel by A. D. Wass against the steamship California (the North Pacific Transportation Company, claimants) for half pilotage.]

William Strong, for libellant.
Joseph N. Dolph, for claimant.

DEADY, District Judge. On January 28, 1871, this cause was before this court upon exceptions for impertinence to the special amended answer of the claimant, when it was held [Case No. 2,312] that the claim for half pilotage, stated in the libel, although given by the state statute, could be enforced in admiralty against the vessel.

On March 21 and 25, the cause was tried upon the questions of fact arising upon the libel and the negative allegations in the general answer thereto.

SAWYER, Circuit Judge. By a stipulation of the parties filed March 20, it is admitted as follows:

1. That on August 7, 1870, both the libellants and Hays, the then master of the steamship, were duly qualified and licensed under the laws of the United States, to pilot the steamship California from Astoria over the Columbia river bar to the open sea.

2. That on August 7, 1870, the said steamship was a sea going vessel of more than twenty-five tons burden and drawing thirteen and a half feet of water, and was then lying at the port of Astoria, about to proceed over the bar of the Columbia river to the open sea on a voyage to the foreign port of Victoria, and that libellant then and there hailed said steamship and offered to the master thereof his services as pilot, to pilot said steamship over said bar to the open sea, but said master refused to accept said services; and that prior to such offer of services no pilot licensed under the laws of Oregon, had offered his services to pilot said steamship on said voyage.

3. That on August 7, 1870, said Hays was not licensed as a pilot upon said bar by the pilot commissioners of Oregon; but did, after his refusal to accept the services of libellant as aforesaid, pilot said steamship

over said bar to the open sea, on the voyage aforesaid.

Among others, the amended answer puts in issue the allegation of the libel that on August 7, 1870, the libellant was duly qualified and licensed under the laws of Oregon to pilot said steamship over said bar. The admissions contained in the stipulation establish all the allegations of the libel contested by the answer except this. To support this one, upon the trial, the libellant offered to prove by Thomas J. Dryer.

That about August 1, 1870, he was one of the state board of pilot commissioners for the Columbia and Wallamet rivers, and that about that time, there was a meeting of the board at Astoria, at which time witness said to the other two commissioners that he had crossed the bar with the libellant and believed that he was qualified to serve as pilot thereon, and that at said meeting it was agreed by the commissioners to grant libellant a "branch," but that witness being anxious to return to his home, at Portland, did not remain to sign the branch, but told Mr. Taylor, one of the commissioners to sign his name to said "branch;" and that the steam tug was doing duty on the bar before August 7, 1870, and the libellant was acting as master of her.

He also offered in evidence a paper, entitled "Certificate of Branch Pilot," addressed "To whom it may concern," dated, "August 1, 1870," and signed "J. Taylor, William F. Kippin and Thomas J. Dryer per J. Taylor, Commissioners." The body of the certificate states that "We Jas. Taylor, Thos. J. Dryer and Wm. F. Kippin, having been duly elected and commissioned pilot commissioners on the Columbia and Wallamet rivers, in pursuance of an act of the legislative assembly of the state of Oregon, approved October 17, 1860, entitled 'An act for the establishment of a pilotage on the Columbia and Wallamet rivers,' and having duly qualified in said office, having first examined A. D. Wass, attached to the steam tug Astoria as employe and master, as to his qualification to act as pilot, and deeming the appointment of said A. D. Wass necessary for the commercial interests of said Columbia river and bar, we do hereby, by these presents appoint the said A. D. Wass * * * master, to be and act as pilot," etc. In the place where stars are inserted, there is in the original, as appears to me, the word "as" and the word "the" written over it with different ink, but no question is made about the alteration.

The evidence when offered was objected to by counsel for claimant as incompetent to prove the fact alleged—that the libellant was, at the date mentioned, a duly qualified and licensed pilot under the laws of Oregon, etc. After argument the evidence was received, subject to the question of its competency and legal effect. Thereupon the libellant rested and the claimant also.

Before proceeding to consider the question arising upon the objections made to this testimony, it will be necessary to state briefly some of the provisions of the state pilot acts, regulating pilotage on the Columbia and Wallamet rivers. Section 1 of the act of October 17, 1860 (Code Or. 840), declares that there shall be a board of pilot commissioners constituted and appointed as therein provided. Section 2 of the same act as amended by section 1 of the act of October 28, 1868, provides: "That the legislative assembly shall biennially elect three pilot commissioners, who are experienced in nautical affairs, and who shall constitute said board; and said board may appoint a secretary and fix his compensation, whose duty it shall be to keep correct minutes of all the proceedings of the commissioners, in books to be provided by them for that purpose, and register the names of all pilots with the dates of their license or branch, and place of residence; also to keep a register of all vessels arriving and departing—their class, tonnage, draft of water, and amount received for pilotage and tonnage." Section 2 of the act of October 21, 1864 [Sess. Laws Or. 55], as amended by the last mentioned act, appointed three commissioners, and authorized them to contract for a steam tug, to be kept on the Columbia river bar, under a subsidy from the state, for the term of five years, for the purpose of pilotage and towage, and also provided that when this contract should be made, and the pilot commissioners aforesaid should examine and license the master and other pilots in the employ of said tug, and no others, so long as the owners thereof should comply with their contract.

The first point in the argument of counsel against the admissibility of this evidence is, that under section 2 of the act of 1860, as amended by that of 1868, it is the duty of the pilot commissioners to appoint a secretary, who must keep minutes of their proceedings, including the application, examination, and licensing of pilots. In reply, counsel for the libellant insists that the words of the section "may appoint a secretary," are merely permissive and not mandatory, and therefore it is optional with the board whether they will appoint such secretary, and have such minutes kept or not.

The question to be determined is, what was the real intent of the assembly, taking into consideration all the circumstances, in enacting the section in question? Considering the propriety and importance, both to the public and individuals, of the performance of the duties required of the secretary by this section, I have no doubt but that the legislature intended to impose upon the commissioners the absolute duty of appointing this secretary as the necessary and only means provided to secure "correct minutes" of the proceedings and other important matters mentioned therein. The section, in fact the whole of the act of 1868, is awkwardly

and clumsily constructed and unskilfully worded, but the intent in this particular appears tolerably plain.

In Supervisors v. U. S., 4 Wall. [71 U. S.] 435, it was decided that a statute of Illinois, which provided, that where the ordinary revenues of a county were not sufficient to discharge its indebtedness, the board of supervisors, "may, if deemed advisable," levy a special tax for that purpose, was not merely permissive, but peremptory. In the language of the syllabus, the court held: "That where power is given by statute to public officers, in permissive language—as that they 'may, if deemed advisable' do a certain thing—the language used will be regarded as peremptory when the public interest or individual rights require that it should be." The case at bar is a much plainer one than this, that the intent of the legislature in enacting the provision was peremptory in fact, although expressed in a permissive form.

There is no evidence before the court as to whether any minute of the licensing of the libellant was made by the secretary of the board or not. It being the duty of the latter to appoint a secretary, and his to keep a minute of such transactions, it is reasonable to suppose that if the libellant was ever duly licensed, there was a proper entry made of this fact as well as of his previous application and examination. This being the case, it follows that parol testimony is not admissible to prove the meeting of the commissioners and examination of the libellant. To admit it, would violate the rule requiring the production of the "best evidence of which the case in its nature is susceptib'": Greenl. Ev. § 82; Code Or. p. 319, § 681; Id. p. 330, § 733); which, in this case, is the minute book of the commissioners or a certified copy thereof.

Rejecting then for this reason, the testimony of the witness Dryer, as to the alleged meeting of the commissioners and the licensing of the libellant, it remains to be considered whether the "certificate" or "branch" offered in evidence is sufficient upon its face to prove that the libellant was duly licensed as a pilot under the laws of Oregon as alleged in his libel, when he hailed this steamship.

The only evidence in the case which tends to show that in pursuance of the statute above cited, a tug had been placed on the bar prior to August 1, 1870, is the testimony of Dryer, that the steam tug was doing duty on the bar before that time, and the libellant was acting as master of her. The name of the tug is not mentioned, and the evidence is very indefinite as to the nature of the employment in which that tug was engaged. The contract for and acceptance of the tug can be shown by better testimony than parol. But I suppose, the fact that a tug of which libellant was master, was doing duty on the bar as a pilot boat at a particular time may be shown by parol. As the case stands, the

fact itself is probably not very material, and it was as I understood, tacitly admitted on the argument by counsel for claimant. But it cannot be inferred from that fact alone that the master of the tug was at the same time a licensed bar pilot. Because of his position on the tug he would be entitled to a license if examined and found qualified by the commissioners, but not otherwise.

It must appear from the "certificate" or "branch" offered in evidence, that the libellant was qualified to pilot this steamship or else he cannot maintain this suit for pilotage. The power to examine and license pilots is conferred upon the commissioners jointly as a board, and not on any less number of them. But by force of section 509 (Code Or. 275), I am satisfied that a majority of them may act in a given case, but only upon the meeting of all. It reads: "Whenever any authority is conferred upon three or more persons, it may be exercised by a majority of them upon the meeting of all, unless expressly otherwise provided."

This certificate contains no direct averment that the three commissioners met and acted in the matter of granting the libellant a branch. If it did, it might be sufficient if only signed by two of them. What it does aver is, that "we," A. B., C. D. and E. F., "examined," and do "appoint," etc. Now, who "we" are, is only to be ascertained by examining the signatures to the instrument. "We" is used distributively, and each of the persons included in it speaks and signs for himself. Although the body of the instrument may state that "we," A. B., C. D. and E. F. did so and so, this is no evidence that either of them did anything of the kind, except as to those whose names appear signed to it. True, any two of the commissioners might sign a certificate stating directly that all three met and acted in a particular matter, and whether this would be sufficient evidence of the fact or not, it would be at least an assertion of the two to that effect. But in this case the statement—"we," A. B., C. D. and E. F.—although joint in form is several in effect, and amounts to nothing more than a statement by each person who signed the instrument that he did or knew the matters therein stated. As used, this certificate, "we" is equivalent to the "undersigned," and includes no one who did not sign it. So the matter turns upon the fact of whether or not it appears upon the face of the certificate, that all three of the commissioners signed it. If it does so appear, the necessary implication is, that they all met and acted in the matter, at least until the contrary is shown by the minutes or records.

As has been stated, the certificate appears to have been signed by two persons styling themselves pilot commissioners, and one of these two for a third. The reasonable and almost necessary inference from this fact is, that the third person, whom these two

style a commissioner, was not present, or he would have signed in person, and not by an agent. Even if the parol testimony were considered, the conclusion in this respect would be the same. For although Commissioner Dryer states that he was present with the other commissioners when the matter of licensing libellant was considered, or more properly speaking talked about—still, it directly appears that he was not present when the certificate or branch was granted —signed and delivered. Until this license, branch or warrant (it is called by all these names in the act) was signed and delivered by the board, the matter was not determined and either of the commissioners might change his mind and refuse to grant or allow it.

Nor could Dryer delegate to any one the power to grant or sign this license. The power given by the act to these commissioners to examine pilots, and grant or refuse them licenses, is an important one. It is a public trust committed to them and each of them, which cannot be delegated to third persons. Sinclair v. Jackson, 8 Cow. 582; Story, Ag. § 13; 7 Op. Atty. Gen. 594. "In all cases of delegated authority, where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another unless there be a special power of substitution. Such is the rule in relation to powers created by deed or will; and a fortiori is it so, where the authority is conferred by act of the legislature." Lyon v. Jerome, 26 Wend. 485.

In the argument for libellant it was substantially admitted that a pilot commissioner could not delegate his authority to examine and license pilots,. but it was contended that here was no such delegation of authority by Dryer, but only the writing of his name with consent by another, after the thing to be done had been agreed upon by all. Without admitting that the name of a public officer can be signed to an official paper under any circumstances, by any other hand than his own, there is no ground for asserting that this transaction amounted to nothing more than that. It must be borne in mind, that upon the face of the paper and from Dryer's testimony as well, it appears that he was absent when the certificate was granted—signed and delivered. Now this is a very different thing from the mere mechanical act of one person writing another's name upon a paper in the immediate presence of and by the special direction of the latter. From a careful consideration of the premises, I conclude:

1. That the pilot act of 1868 contemplates and requires that the proceedings by and before the commissioners shall be recorded— reduced to writing in a book to be procured by them for that purpose—and that this rec-

ord is the best evidence of such proceedings.

2. A license signed by all the commissioners is prima facie evidence of the facts stated in it concerning the examination, qualification and licensing of the pilot to whom it purports to be granted; but when such license is only signed by two of such commissioners, it is not a valid instrument, unless it further appears from the minutes of the board, that the matter was acted upon and the license granted at a meeting of the commissioners when all of them were present, or unless such license contains a direct recital or averment of such meeting and action in reference to such license.

3. That the alleged pilot "certificate," offered in evidence by the libellant, being signed by only two persons, and there being no evidence in either the recitals or averments contained therein, or from the minutes of the commissioners, that it was granted at a meeting of the board where all were present, is not competent evidence that the libellant was a duly qualified pilot under the laws of Oregon, on August 7, 1870, as alleged by him in his libel.

A decree will be entered dismissing the libel, and for the claimant for costs and expenses.