GUSTAF PETTERSON v. BOARD OF COMMISSIONERS OF PILOTS FOR PORT OF GALVESTON.

Decided May 28, 1900.

**1.  Pilots—Appointment of—Statute Construed.**

Article 3792 of the Revised Statutes, providing that "the board of commissioners of pilots shall require a certain term of residence in the State to authorize any person to exercise the functions of a branch pilot for their port, or said bays; as also to establish a term of probation not exceeding one year as a deputy pilot, before any person can exercise the functions of his office," though faulty in expression in the use of the phrase "as also to," is not void for uncertainty, and warrants the construction uniformly placed on it since its enactment in 1846, to the effect that it is the duty of the board to establish and require a probationary term of one year as deputy pilot, without compliance with which by the applicant it will not examine and recommend him for appointment as branch pilot; and the applicant has not the right, because the statute is in terms directory only and because the preceding article says the board "shall examine each new applicant," to compel the board by mandamus to disregard the requirement of service as deputy.

**2.  Same—Pilot Is State Officer.**

Under the provision of the statute a branch pilot is a State officer, though required to obtain license from the United States government, and an applicant for appointment as branch pilot can not compel the board of pilot commissioners to examine and recommend him for appointment by the Governor without showing that the Governor has declared it necessary to appoint new pilots. Revised Statutes, arts. 3791, 3792, 3796, construed.

**3.  Same—Constitutional Law—Monopoly.**

The statute relating to the appointment of branch pilots is not unconstitutional because it limits the number who may become pilots, or because, since the appointment of deputies is by the statute left at the option of the pilot, and no one can be appointed pilot until he has served as deputy, it is possible for the pilots in office to monopolize the pilot business to the exclusion of all others.

· **4. Same—Mandamus Not the Remedy.**

Plaintiff, seeking by mandamus to compel the board of pilot commissioners to examine and recommend him for appointment as branch pilot, he not having complied with the terms of the statute as to service as deputy, had no standing in court when, to excuse such noncompliance, it would be necessary to hold the statute under which he asserted his rights unconstitutional and inoperative.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Gresham & Gresham* and *Noah Allen*, for appellant.

*James B. & Charles J. Stubbs* and *Lovejoy, Sampson & Malevinsky*, for appellees.

GILL, ASSOCIATE JUSTICE.—This is an appeal from a judgment sustaining a general demurrer and special exceptions to a petition for mandamus. The purpose for which the mandamus was sought was to compel the board of commissioners of pilots for the port of Galveston to examine appellant as to his qualifications and fitness to act as a branch pilot and to report their findings to the Governor of the State.

Appellant's petition contained the following allegations which he urges are sufficient if true to entitle him to the writ: He alleged that he is an American citizen and has resided continuously for more than five years in the State of Texas. That he is a practical and skilled seaman and holds license under the laws of the United States as pilot for coastwise steam vessels for the port of Galveston. That he is familiar with the harbor of Galveston and the entrance thereto from the Gulf of Mexico, but has never been appointed a deputy pilot for the port, or served as such. That he has served for more than five years as a pilot on the United States revenue cutters on duty at said port, and is by education, training, and experience qualified in every way to act as a branch pilot under the laws of the State of Texas. That he has repeatedly within the last two years requested appellees to examine him as to his qualifications to act as branch pilot at such port, to decide on same, and to report their findings to the Governor. That appellees refused to comply with his request, claiming that under the laws of the State of Texas they have no right or authority to examine anyone for the position of branch pilot unless the applicant has served as a deputy pilot under a branch pilot now commissioned for said port, and that no one can be examined or act as deputy pilot unless he has been appointed by one of the branch pilots and has served as such one year.

Then follows an allegation that there are only eleven branch pilots in service at the port; that they have unlawfully associated themselves together into a copartnership under the name of "Galveston Pilots Association" for the purpose of monopolizing and controlling the pilotage of the port, and have so acted for several years; that they refuse to appoint anyone as deputy who will not agree to act under and subordinate to the rules, orders, and regulations made by the association; that the re-

fusal of appellees to examine anyone except such as have been appointed by the present branch pilots as a deputy pilot, and the refusal of said pilots' association to deputize petitioner or anyone else who desires to work in competition with said association, creates a monopoly in favor of the existing pilots contrary to law and against the rights of petitioner. The articles of the Revised Statutes of Texas bearing upon the subject provide as follows:

"Art. 3790.   The Governor shall appoint, with the consent of the Senate, for each port whose population and circumstances shall warrant it * * · *   a board of five persons of respectable standing under the denomination of 'Commissioners of Pilots.'"   The remainder of the article prescribes their qualifications, etc., and empowers the Governor to suspend, fill vacancies, etc.

Article 3791 provides that the board of commissioners shall be authorized, if they deem it advisable, to examine and decide on the qualifications of any branch or deputy pilot whom they may find already appointed at the time of their organization; and it shall be their duty to examine each new applicant for the office of branch or deputy pilot and to decide on his qualifications, recommending to the Governor, where new appointments are proper, such as are meritorious; and it shall also be their duty to examine into any case of alleged or supposed misconduct or inefficiency in any branch or deputy pilots; and they shall be authorized, after due hearing of accusation, testimony, and defense, to suspend such pilot if sufficient cause appear, and during such suspension he shall not be allowed to exercise the functions of his office. The Governor, however, shall have power at his will and pleasure to remove any branch pilot or to reinstate anyone who has been so suspended.

Article 3792 provides that the board of commissioners shall require a certain term of residence in the State of Texas to authorize any person to exercise the functions of branch pilot for their port or said bays; as also to establish a term of probation not exceeding one year as a deputy pilot before any person can exercise the functions of his office.

Article 3793 provides:   "The board of commissioners of pilots shall have authority, within the limits provided in this title, to fix the rates of pilotage, and to establish regulations respecting the stations whereat and the times wherein pilots shall be on duty, with provisions for leave of absence; as also respecting the class, condition, number and use of pilot boats, and such other minor regulations compatible with the provisions of this title, as may be needed for the government of pilots and for the order and good effect of the proceedings of the board, of which proceedings a record shall be kept; provided, no regulation shall be adopted repugnant to the Constitution."

Article 3794 provides:   "The board shall be authorized and required to hear and determine all disputes that may arise respecting pilots and pilotage; to award to pilots extra compensation for extra services, * * ·*   as also compensation for injurious loss of time incurred by

pilots in waiting on vessels, or by being carried off to sea on vessels by default of the master * * * when such pilot might have been landed." The remaining portions of this article fix the maximum of such compensation and provide for appeals from the judgments of the board in such cases.

By article 3796 the Governor is authorized and required to appoint at each of the ports such number of branch pilots as may from time to time be necessary, each of whom shall hold his office for the term of two years. In case of a vacancy in said office the appointment shall be for the unexpired term only.

By article 3797 branch pilots are required, before entering upon the duties of their office, to enter into bond with sureties in the sum of $5000, payable to the Governor and his successors in office and conditioned for the faithful performance of the duties of his office. Such bond is to be approved by the board of commissioners and filed with the Secretary of State. The oath of office prescribed by the Constitution is also required to be taken and subscribed by each pilot, such oath to be indorsed on the back of the bond, and together with the bond is to be recorded in the county of the port before being forwarded to the Governor.

Under article 3798 each branch pilot may appoint two deputies, subject to examination and approval by the board, and a pilot appointing a deputy without such approval forfeits his own appointment. The board is also clothed with authority to restrict all deputy pilots from piloting vessels over a certain draft.

Article 3799 provides for the penalties of suspension and dismissal for certain named acts of malfeasance.

Article 3800 fixes the rate of pilotage upon classes of vessels subject thereto, and provides that the master of a vessel refusing the services of a pilot shall be liable to such pilot for half the rate of pilotage which he would have earned if accepted.

Article 3803 prescribes a penalty of $50 against any unauthorized person acting as branch pilot; such penalty to be recovered at the suit of any duly authorized branch pilot brought in any court of competent jurisdiction.

The above articles are believed to be all of the Texas pilotage laws which have any bearing on the questions raised on this appeal, or which are necessary to be discussed in this opinion.

The trial court seems to have held the petition insufficient to show the plaintiff entitled to the writ: (1) Because under the law the position of branch pilot is an office to which the Governor has the power in his absolute discretion to appoint such persons and such a number of persons as he may consider necessary for the needs of the port, and the petition does not show that the Governor has thought it necessary to appoint a greater number than are now in service. (2) These appointments are required under the law to be made from the class of persons who have complied with the requirements as to residence in the State for the time fixed by the commissioners, and as to

service as deputy pilot, for the time fixed by them, and the petition does not allege the plaintiff to be one of that class.

Appellant's first, second, fourth, fifth, and sixth assignments of error are thus interpreted by his proposition thereunder: "When a skilled seaman, who is by education, training, and experience mentally, morally, and physically qualified to act as pilot for the port of Galveston, applies to the commissioners to be examined as to his qualifications to act as branch pilot, the board shall examine the applicant, notwithstanding the fact that he has never been appointed or served as deputy pilot for the port."

Under this appellant contends that the provision empowering branch pilots to select two deputies, and providing that no person who has not served the requisite term as deputy can become a branch pilot, is inoperative: (1) Because the article undertaking to empower the board to fix a term of probation for deputy pilots is void for uncertainty, and if not void for uncertainty, is merely directory, and if not void nor merely directory, is unconstitutional, because it places it in the power of the pilots already serving to continue themselves in office, or become their own successors, by refusing to appoint deputies, or by discharging those appointed before the time of probation expires. (2) The law construed as a whole, clearly requires the board to examine and report upon *every* applicant in order that the Governor in his discretion may appoint such persons and such number as the needs of the port may require and thus accomplish the objects contemplated by the law.

While the latter clause of article 3792 is of faulty construction, we do not believe it can be held to be void for uncertainty. The sense of it seems to us very plain, and the defect complained of is so insignificant and obscure that a casual reading of the article does not disclose it. We do not deem it necessary to follow counsel for appellant in his discussion of the rules of construction. The article has stood unchanged since 1846, the date of its passage. So far as we are able to ascertain, the construction placed upon it has been uniform. No one has been misled by the defective phrase, "as also to," etc. It is not a statute which has only occasionally been called into force, but has been an active operative statute by which the boards of pilot commissioners have been controlled and under which the important service of pilotage has been conducted. If a graver reason were urged the court might well hesitate to hold a statute void for uncertainty which has for so many years received a common and uniform construction and has answered the purposes for which it was passed. If, as contended by appellant, the provision is merely directory, we fail to perceive in what respect appellant could be benefited by such a holding. Directory statutes are not void, nor may they be suspended for that reason at the suit of an individual. The question usually arises when the validity of some official act is called in question on the ground that the statutory prerequisites have not been performed. If the statute is mandatory, the official act is invalid. If

directory merely, the act may nevertheless stand. In the case at bar there are strong reasons for holding the provision directory, and this aspect of the clause will be referred to further on in this opinion.

The further contention of appellant in this connection, to the effect that the provision is directory, and therefore can not limit a prior mandatory provision which requires the board to examine *all applicants,* is, we think, unsound. These laws were not passed for the furtherance or preservation of any individual right, but are necessarily a limitation on the rights of individuals. Their clear and manifest purpose is to secure a high order of service in a calling affecting interests of vast public and private concern. The securing of efficient pilots is not only needful in the interests of passengers and property which may be carried in ships, but the public is concerned in keeping its ports and navigable streams free from obstruction by wrecked or disabled vessels. Since the government has undertaken at public expense to maintain the depth of water in the more important ports and streams and to keep them free from obstruction, the public concern is even greater, and the government clearly has the right and power to provide adequate means for the selection of suitable persons to perform the service.

In 1789 Congress, finding that the various States whose territory touched navigable waters had enacted systems of pilotage laws, and perceiving that in the nature of things and because of the variant conditions existing in various ports and waters a uniform system was unwise if not impossible, expressly adopted such laws upon the subject as had already been enacted by the several States and such as thereafter might be passed by them, thus relegating to the States a power which by an article of the Federal Constitution they had conferred upon Congress. For this reason the States are held in the enacting of laws upon this subject to be exercising an original power, and not one delegated by Congress. The Chase, 14 Fed. Rep., 854.

In the exercise of this power they have been uniformly unmindful of the private right to exercise the calling of a pilot, and have unhesitatingly sacrificed such right where it appeared to stand in the way of the object to be accomplished. A like purpose runs through every article of the law in question and it seems clear that when the duty was imposed to "examine each new applicant, * * * recommending to the Governor where new appointments are proper such as are meritorious," it was meant to provide against the recommendation of any person without the careful examination required. Of course there is a point beyond which the lawmakers can not go in subordinating the interest of the individual to the welfare of the public, and if the petition had alleged a compliance on the part of plaintiff with the provisions as to residence and service, and had further alleged that the Governor had declared that new appointments were proper, the court would doubtless have allowed the writ to prevent discrimination against him which would have been apparent from the allegation. He would have had the

same right as another to have his name considered by the Governor, if he was found to possess the requisite qualifications.

That the right of an individual to examination and appointment is not absolute is evidenced by parts of this very law which are not assailed, notably the power conferred on the Governor to limit the number of pilots in any port, being controlled in his discretion by the needs of the port. Also the power of the Governor to remove any pilot for any reason, or for no reason, the language of the act being "at his will and pleasure."

Recurring to article 3791, it seems to us to have been intended that the Governor should have both the appointing power and the discretion as to the needs of the port, the board in this latter respect being advisory. This conclusion is authorized both by the language of the act and the object sought to be accomplished. The board resides at the port, and being charged with the duty of appointing stations and hours for the pilots, must, in the exercise of that duty, learn the necessities of the port, and it would be their plain duty, if new or other pilots were necessary, to call the Governor's attention to the situation, and recommend suitable persons from whom he might select. The Governor might ignore their suggestions, or conclude, in the absence of suggestions, that more were necessary, in which event he could require them to furnish him with names as provided by law.

To hold that the board should examine all who apply would be to compel them to do in many cases an idle and futile thing, for if no vacancy existed and no new appointments were necessary, there could be no purpose to be accomplished by the examination. If any considerable time elapsed from the date of the examination until the appointment was necessary, the applicant might in many ways become unsuitable—might cease to be "meritorious." The clause, "where new appointments are proper," can not be held to be meaningless.

If the State had the power to limit the number of pilots at this port the whole act can stand. Whether or not the provision, construed in connection with other parts of the law and which together apparently make the Governor's power to appoint dependent on the appointment of deputies by pilots already in service, is constitutional, may be a graver question. The contenton that it enables the pilot to perpetuate himself in office, or to select his successor, thus depriving the Governor of that discretion with which the law clearly clothes him, is not without force. The mere fact, however, that a law is susceptible to perversion or abuse can not render it invalid. Nevertheless, if the evil complained of was the inevitable effect of the law, the courts would decline to enforce it. The reasons are apparent.

We think the law in its other provisions furnishes an efficient remedy for the threatened or possible wrong. In the first place, if the clause requiring a term of service as branch pilot be directory, and it seems to be so, the Governor or board could ignore it in case of abuse, and any person might be appointed whom the board might find upon examina-

tion to be possessed of the other required qualifications. Again, the board has power to suspend and the Governor to remove in such a case, and the pilots in office could be so disciplined as to compel a cessation of the abuse complained of. If the pilots in office, for the purpose of maintaining themselves in office, should adopt a system of discharging their deputies just before the expiration of the probationary period, their purpose could be easily thwarted under the power possessed ·by the board to fix or change the probationary period at will, ·and this could be done without notice, and the deputies in service thus placed in a position to be examined for appointment.

It can not be urged that the requirement of service as a deputy is unwise or unreasonable, for it results in experience in the very waters in which they are afterwards to serve as pilots. The pilot is made re-·. sponsible for the acts of ·his deputies, and he can not appoint one without examination and indorsement by the board. No better system could be devised for the securing of able and efficient men to perform the responsible and onerous service imposed. As to the supposed case of the simultaneous loss or destruction of all appointed pilots ·and deputies in one catastrophe, suggested by counsel, the law does not leave commerce helpless even in that case, for in such event his client or any other fit person could perform the service without fear of punishment. The penalty is only enforcible at the suit of a *pilot in office.* We think the law itself meets the point presented, and appellant's contention can not be allowed.

Under the eighth, ninth, and tenth assignments it is urged that the court erred in holding that the eleven branch pilots for the port of Galveston have the right to associate themselves together for the purpose of monopolizing and controlling the pilotage of said port. In Jones v. Clifford, 5 Florida, 510, it was held that the formation of a partnership among all the pilots of a port was not unlawful, but commendable, for the reason that by so doing they could relieve each other at stated hours, purchase better boats with their joint funds, and otherwise conduce to better service. Of course the question of monopoly was not present in that case. In Louisiana pilots are distinctly held to be public officers, yet the formation among them of a partnership is permitted by statute. Levine v. Michel, 35 La. Ann., 1121. An office is necessarily a monopoly in a certain sense. But it is unnecessary to pass on the question here, for neither the pilots' association as alleged nor the individual pilots are parties to this suit, and we presume the fact was alleged to show an excuse for the failure of plaintiff to serve his probation as deputy pilot, perhaps also to emphasize the contention that the law was open to this abuse and was in fact being perverted.

It is not complained that they have not appointed a sufficient number of competent deputies according to the strict requirements of the law, but that for a wrong motive and a wrong reason they have not appointed plaintiff. The pilots in office necessarily have a monopoly. Should the Governor double the number, the fact would remain. The

compensation for their services is absolutely fixed by the authorities under the law. Of course this court can not commend the motive alleged, but the allegation can not affect the result in this case. It is not averred that the board or the Governor is concerned in this wrong purpose, or have connived at it, or have failed to remedy the evil after it was called to their attention. They have an efficient and summary remedy.

Under the eleventh assignment of error the action of the trial court is assailed on the ground that a branch pilot is not an officer of the State of Texas: (1) Because he exercises no functions of government, and is a part neither of the legislative, executive, or judicial departments. (2) Because to every citizen is guaranteed the right to follow any lawful profession, trade, or calling, limited only by such regulations as the interests of the public may require. And the Legislature can not under the guise of regulation permit a few to engage in such calling to the exclusion of others. (3) Because, by the provisions of an act of Congress, no person may act as pilot on coastwise steam vessels unless he have a license issued under the provisions of the Federal law, and therefore if he be a State officer he is also a Federal officer, which contravenes the provision that no person shall at the same time hold a State and Federal office.

Whether a pilot exercises any of the functions of government, and to what department he is properly assignable, are questions which we will not stop to determine. That the Legislature intended to make them officers is manifest from the terms of the law. This does not seem to be controverted. We do not think the fact that he performs a part of what were his original duties under the State law, by authority of a license issued under the Federal act, militates against this holding. The Federal act does not undertake to make him a Federal officer, but merely licenses him. The act last named expressly leaves undisturbed the provisions of the State law, except as to the class of vessels to which the Federal act applies.

Whether the duties of a pilot are such as the State may rightfully confide alone to a limited number of men of its own selection, to the exclusion of all others however well qualified, seems at first glance to be very questionable, and it is a point upon which we have been able to find no authority, nor are we cited to any. The vast majority of pilotage cases have arisen in the enforcement by pilots of their right to pilotage fees, where the service was tendered and refused. These cases bear upon the present question only by analogy. The right to enforce the collection of fees in such case has been upheld without a single exception so far as we have been able to ascertain. In Ex Parte McNeel 13 Wallace, 236, the right is upheld, it being declared a necessary and usual part of every system of such provisions. The fact is noted that like provisions have obtained from an early day and are to be found in the laws of most commercial States. The Roman law obliged the captain to take a pilot or be responsible for the damages that might en-

sue: The Hanseatic ordinances, the maritime laws of Sweden, the Netherlands, France, England, and ten of the States of the Union, contained provisions under which a penalty was incurred if the services of a pilot were refused. The law in question is as old as the State, and contains a similar provision. Now if the State, by imposing the duty of pilotage upon a select few to the exclusion of the many, invades an inviolable right, does it not invade a like right when it requires the master of a vessel to pay pilotage, even if by his own skill he has brought his vessel safely into port? The public interest as compared with the private right is so vast, the private right must yield. A parallel in principle is found in the exercise by the State of the right to establish pest-houses and to place contagion patients in the charge of the government physicians without reference to the wishes of the patient, thus denying to him the right to select his own medical attendant. In California the position of pilot is held to be an office, being so made by statute. Palum v. Woodbury, 14 Cal., 43; Flynn v. Abbott, 16 Cal., 359.

They seem to be treated as such in Massachusetts. Dollivan v. Parks, 136 Mass., 499. The Oregon law seems to authorize limitation as to number. The California, 1 Sawy., 596. The Indiana law seems to require bond and oath after appointment by the Governor. Barnaby v. State, 21 Ind., 450. In New York the applicant is required to undergo a preliminary service for three years, during which time the board examines him three times. He then must serve as a deputy for two years, after which he may be appointed by the Governor by and with the consent of the Senate. In Louisiana they are officers by force of the statute. See the Louisiana case, supra. We have not these statutes before us, but the nature of their provisions are inferred from the cases cited. In Georgia the statute does not make them such, and of course they are held not so to be. Dean v. Healy, 66 Ga., 503; Wright v. Connors, 69 Ga., 250. These cases, however, were decided upon the statute, and not upon principle.

Courts should declare a law unconstitutional only when it is clearly so. Fletcher v. Peek, 6 Cranch, 308. And a court should hesitate long to deny the power here undertaken to be exercised, in view of the practical similarity of the laws of all the States upon the subject; and in view of their venerable age, during which they have either been free from a like attack or have else withstood its force; and in view also of the forbearance of Congress, which at all times had the power to abrogate these laws or any objectionable feature therein.

We might also refuse to disturb the law for the reason that it is conceded, for the purposes of this case, that the State has the right to limit the number who may engage as pilots at this port, the law having conferred that power on the Governor.

The appellant is in this position: If the features of the law which he attacks are stricken out, the law is so crippled as to be unenforcible; or if enough remains, it can not be said that the Legislature would have passed it in the absence of these provisions; in which event the appel-

lant has no standing in court, for the right he seeks to enforce is asserted under the law in question. If the law stands, he has not complied with its provisions, and a demurrer was properly sustained.

The judgment of the trial court is affirmed.

*Affirmed.*

Writ of error refused.