STATE v. ST. LOUIS SOUTHWESTERN
RY. CO. OF TEXAS et al.

(Court of Civil Appeals of Texas. Austin. May 21, 1913. On Motion for Rehearing, July 5, 1913. Writ of Error Dismissed by Supreme Court Dec. 10, 1913.)

1. RAILROADS (§ 9*)—ORDERS OF COMMISSION— REVIEW—APPEAL.

Rev. Civ. St. 1911, art. 6658, placing on parties complaining of an order of the Railroad Commission, and bringing action in the district court to set it aside, the burden of showing "by clear and satisfactory evidence" that it is unreasonable and unjust to them, the presumption given a judgment of a trial court that it is

justified by the facts must be accorded such order in the district court, and on appeal from the judgment of the district court holding against the order, till the contrary is clearly and satisfactorily shown by the evidence adduced in the district court.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*]

2. RAILROADS (§ 9*)—ORDERS OF COMMISSION—PROCEEDING TO SET ASIDE—PLEADINGS.

Even if the remedy given by Rev. Civ. St. 1911, art. 6657, to parties complaining of an order of Railroad Commission, by action in the district court, against the commission, to have the order set aside, in which, under article 6658, they have the burden of showing the order to be unjust and unreasonable to them, be exclusive, their answer, in a suit in such court, brought by the Attorney General, by order of the commission, against them for enforcement of such order, and for penalty for its disobedience, in which answer they allege the order to be unjust and unreasonable as to them, by reason of facts set out, and pray that the order be declared void or. its equivalent, for judgment in their favor, amounts to a plea in reconvention or cross-bill, and a substantial invoking of their statutory remedy.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*]

3. JUDGMENT (§ 948*)—RES JUDICATA—PLEADING.

Res judicata, to be available, must be pleaded.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1787–1793; Dec. Dig. § 948.*]

4. CONSTITUTIONAL LAW (§ 62*)—DELEGATION OF POWER TO RAILROAD COMMISSION.

While the power of the Legislature, under Const. art. 10, § 2, to correct abuses by railroads, may be delegated to the Railroad Commission, the declaration of what is an abuse must be by an act of the Legislature.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

5. RAILROADS (§ 9*)—COMMISSION — POWER—"ABUSE."

An abuse by a railroad, which the Railroad Commission may correct, is declared by an act, not using the word "abuse," but imposing a duty on the railroad; the disregarding of such duty by the railroad being the abuse.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, vol. 1, pp. 48, 49.]

6. CONSTITUTIONAL LAW (§ 62*)—RAILROADS (§ 58*) — DELEGATION OF POWER TO RAILROAD COMMISSION—UNION DEPOTS.

Acts 31st Leg. (2d Ex. Sess.) c. 10, declaring that, where two or more railroads reach the same city or town, the Railroad Commission shall ascertain whether it is practicable and feasible for them to use a union depot, and if it finds it is practicable for them to join in the construction and use of a depot, it shall give notice to them, and, after investigation and public hearing, may require construction and maintenance of such depot by them, provided it shall appear to it that the construction and maintenance thereof is just and reasonable to the companies and demanded by the public interest, and it may specify the requirements of such depot as to kind and character, is, in effect, a declaration that railroads shall, under certain conditions, construct and maintain a union depot, leaving to the commission merely the determination, in the first instance, whether those conditions exist, which is not the delega-

tion of legislative power, and does not invalidate the law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62;* Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. § 58.*]

7. CONSTITUTIONAL LAW (§ 48*)—VALIDITY OF LAWS.

A law should not be held unconstitutional, unless clearly so.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

8. RAILROADS (§ 58*)—COMMISSION—POWERS—SITE OF UNION DEPOT.

The grant, in terms, by Acts 31st Leg. (2d Ex. Sess.) c. 10, of power to' the Railroad Commission to require railroads to build union depots, carries by implication every power necessary to accomplishment of such object, including that to select the site; the companies failing or refusing to agree thereon.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. § 58.*]

9. EMINENT DOMAIN (§ 47*)—CONDEMNATION FOR UNION DEPOT—LAND OF RAILROAD.

Such interest in the land of one railroad company as is necessary for the depot purposes of two other companies, under the order of the Railroad Commission that the three construct a union depot on the depot site of the first company, may be condemned by them, under Rev. Civ. St. 1911, art. 6504, authorizing a railroad, unable to agree with the owner for purchase of real estate required for its depots, to condemn it.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig. § 47.*]

10. EMINENT DOMAIN (§ 47*)—CONDEMNATION —PROPERTY SUBJECT TO MORTGAGE.

Land of a railroad, though subject, with the rest of its property, to the lien of all its mortgage bonds, may be condemned for a union depot; the bondholders being made a party to the proceedings.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig. § 47.*]

11. EMINENT DOMAIN (§ 47*)—CONDEMNATION OF PROPERTY CONDEMNED FOR SPECIAL PURPOSE.

A railroad's depot site, though condemned by it for such purpose, may be condemned for a union depot, which it and another company are ordered by the Railroad Commission to construct thereon; the one from whom such company condemned it being made a party to the second proceedings, and therein allowed any extra damages to which it may be entitled.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig. § 47.*]

12. RAILROADS (§ 254*)—DISOBEYING ORDERS OF COMMISSION—PENALTIES.

The penalties prescribed by Acts 31st Leg. (2d Ex. Sess.) c. 10, § 2, for failure of railroads to obey orders of the commission for construction of a union depot should not be imposed, they, in refusing to obey the orders, not acting willfully, in the sense of intentional wrongdoing, but standing on what they, under the advice of counsel, believed to be their legal rights.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 764–772; Dec. Dig. § 254.*]

## On Motion for Rehearing.

13. RAILROADS (§ 9*)—DISPOSITION OF CASE ON APPEAL—REMAND.

While the judgment of the district court in favor of railroads, as against an order of the Railroad Commission, must be reversed, there being insufficient evidence to show the order was unjust and unreasonable as to them, yet

there being some evidence from which it might be inferred that the order was, in certain respects, unjust and unreasonable as to them, and it seeming that the case was not as fully developed thereon as it should have been, it will be remanded, that these issues may be again submitted and specifically passed on.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*]

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Suit by the State of Texas against the St. Louis Southwestern Railway Company of Texas and others. Judgment for defendants, and the State appeals. Reversed and remanded.

B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State. E. B. Perkins, of Dallas, N. H. Lassiter, of Ft. Worth, Sam R. Scott, of Waco, W. C. Morrow, of Hillsboro, and Hiram Glass, of Austin, for appellees.

### Findings of Fact.

JENKINS, J. 1. This suit was brought by appellant, the state of Texas, against the appellees, the St. Louis Southwestern Railway Company of Texas, the Missouri, Kansas & Texas Railway Company of Texas, and the Trinity & Brazos Valley Railway Company, to recover of each of them penalties for the violation of the orders of the Railroad Commission of Texas, in reference to the construction of a union depot, as hereinafter fully set out, and for a writ of mandamus and mandatory injunction to require the erection and maintenance of a union depot at Hillsboro, Tex., by appellees.

2. Each of appellees is a railway corporation, and each operates a railroad which reaches the city of Hillsboro, in Hill county, Tex.

3. Appellees have no union depot in said city of Hillsboro, but each owns and operates a separate depot in said city.

4. On January 17, 1911, the Railroad Commission of Texas entered the following order:

"Office of Railroad Commission of Texas.

"Hearing No. 1108.

"Austin, Texas, January 17, 1911.

"Hillsboro Petition for Union Passenger Depot Building.

"Whereas, in pursuance to notice theretofore duly and legally issued, the Railroad Commission of Texas did, on March 22, 1910, duly issue and promulgate its order in hearing No. 1007, as follows, to wit:

" 'Office of Railroad Commission of Texas.

" 'Hearing No. 1007.

" 'Austin, Texas, March 22, 1910.

" 'Hillsboro Petition for Union Passenger Depot Building.

" 'The above numbered and entitled cause, in pursuance of notice duly given, having been called for hearing by the Railroad Commission of Texas on March 8, 1910, and the commission having heard the evidence offered and the facts presented pertaining to the matters covered by the petition and the notice herein, and having duly considered the same, and having also had, under its direction, the physical conditions with respect to the location of the depot building prayed for duly inspected and reported on by its engineer, is of opinion that the present passenger depot facilities of the railway lines entering the city of Hillsboro, Tex., are inadequate and insufficient to the needs of the business of said station, and for the proper accommodation of the traveling public, and that the construction, operation, and maintenance of a union passenger depot in the city of Hillsboro jointly by all the railway companies hereinafter named and whose lines enter said city is both feasible and practicable, is just and reasonable to the railroad companies involved, is demanded by the public interest, and will be mutually beneficial to said railroad companies and to the traveling public.

" 'Therefore, by virtue of the authority conferred upon it by law, it is hereby ordered by the Railroad Commission that the Missouri, Kansas & Texas Railway Company of Texas, the St. Louis Southwestern Railway Company of Texas, and the Trinity & Brazos Valley Railway Company be and they are hereby ordered and required to construct, operate, and maintain a union passenger depot building in the city of Hillsboro, Tex., said depot building to be located so as to best serve the purpose for which it is intended, and the expense of construction, maintenance, and operation of said depot to be prorated between the said railway companies upon such basis as they may determine among themselves.

" 'It is further ordered that within sixty (60) days from this date plans and specifications for the depot building hereinbefore required to be constructed be prepared and submitted to this commission at its office in the capitol at Austin, in order that it may judge of the adequacy thereof and for its approval, and that said depot building be constructed and ready for occupancy on or before January 1, 1911.

" '[Signed]     O. B. Colquitt,
" 'William D. Williams,
" 'Commissioners.

" 'Attest:' E. R. McLean, Secretary.'

"And whereas, it appearing to the Railroad Commission of Texas that said railway companies and each and all of them wholly failed and refused to comply with or be governed by the terms of said order so entered under date of March 22, 1910, the Railroad Commission of Texas, acting under the authority conferred upon it by law, did, on October 31, 1910, issue to said railway com-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

panies and each of them the notice as follows, to wit:

" 'Office of Railroad Commission of Texas.

" 'Austin, Texas, October 31, 1910.

" 'Special Notice.

" 'To the Missouri, Kansas & Texas Railway Company of Texas, the St. Louis Southwestern Railway Company of Texas, and the Trinity & Brazos Valley Railway Company:

" 'Whereas, an order dated March 22, 1910, was entered in hearing No. 1007, whereby the above-named railroad companies were ordered and required by the Railroad Commission of Texas to jointly construct, operate, and maintain a union passenger depot building in the city of Hillsboro, Tex., said depot to be located so as to best serve the purposes for which it is intended, and the expense of construction, maintenance, and operation of same could be prorated on such basis as might be determined between themselves, said depot to be constructed in accordance with plans and specifications to be prepared; and

" 'Whereas, said order has not been obeyed by said railroad companies; and, whereas, said railroad companies have failed and refused to present to the Railroad Commission of Texas plans and specifications of a union passenger depot as required by said order, and, whereas, said railroad companies are unable to agree upon plans and specifications for said depot:

" 'Now, therefore, notice is hereby given to the above-named railroad companies, and each of them, that the Railroad Commission of Texas will, on Friday, November 11, 1910, at its office in the capitol at Austin, consider the question of the adoption and promulgation of an order specifying the requirements as to kind and character of a union passenger depot to be jointly constructed by the above-named railroad companies in the city of Hillsboro, and, after due hearing and consideration of all plans and suggestions that may be presented and made by the above-named railroad companies, and each of them, as to the kind and character of such union passenger depot, will enter its order specifying the requirements of such union passenger depot as to kind and character thereof.

" 'The commission at said time will further consider the question of the apportionment of the cost of construction and maintaining said union passenger depot, and, if the above-named railroad companies cannot agree upon the cost of constructing and maintaining said union passenger depot, then the said Railroad Commission of Texas will itself apportion the cost of constructing and maintaining the same. The Railroad Commission of Texas will, at said hearing, in its order, limit the time within which said union passenger depot shall be constructed, and shall require the construction of said depot to be begun on or before a certain date to be named in its said order.

" '[Signed]                 Allison Mayfield,
                                    " 'Chairman,
                                " 'O. B. Colquitt,
                            " 'William D. Williams,
                                         " 'Commissioners.
" 'Attest: E. R. McLean, Secretary.'

"That thereafter, to wit, on November 11, 1910, a hearing was had in the office of the Railroad Commission of Texas at Austin, Tex., in pursuance of said notice of date October 31, 1910, and the commission, having heard the evidence offered and facts presented pertaining to the matters covered by said notice, as well as the question of the proper location of said depot building and the necessary tracks to serve the same, and having duly considered the same, and having also had under its direction the physical conditions with respect to the location of the depot building duly inspected and reported on by its engineer, is of the opinion and finds the fact to be that the present passenger depot facilities of said railway lines entering the city of Hillsboro, Tex., are inadequate and insufficient to the needs of the business of said station, and for the proper accommodation of the traveling public, and that the construction, operation, and maintenance of a union passenger depot in said city of Hillsboro jointly by all the railway companies hereinbefore named and whose lines enter said city is both feasible and practicable, is just and reasonable to the railroad companies involved, is demanded by the public interest, and will be mutually beneficial to said railroad companies, as well as the traveling public:

"Therefore, by virtue of the authority conferred upon it by law, it is hereby ordered by the Railroad Commission that the Missouri, Kansas & Texas Railway Company of Texas, the St. Louis Southwestern Railway Company of Texas, and the Trinity & Brazos Valley Railway Company be and they are hereby ordered and required to construct operate and maintain a union passenger depot building in the city of Hillsboro, Tex., said depot building to include baggage and express rooms, and is to be constructed of brick and other material, as shown by and in accordance with the blueprint plans hereto attached, marked Exhibits A and B, respectively, and made parts hereof.

"It is further ordered, adjudged, and decreed by the Railroad Commission that said depot building, including said baggage and express rooms, are to be located in the city of Hillsboro, Tex., on the site now occupied by the Missouri, Kansas & Texas Railway Company of Texas passenger station, as shown by the blueprint plans hereto attached marked Exhibit C, and made a part hereof.

"It is further ordered, adjudged, and decreed by the Railroad Commission that said

railroad companies, and each of them, shall construct the necessary tracks to serve said union depot in accordance with and as per the blueprint plan hereto attached, marked Exhibit C, and made a part hereof.

"It further appears that the Missouri, Kansas & Texas Railway Company of Texas owns the site hereby selected for the location of said depot building, and that it would be just and equitable, both to the Missouri, Kansas & Texas Railway Company of Texas, as well as to the St. Louis Southwestern Railway Company of Texas and the Trinity & Brazos Valley Railway Company, that said last two named companies compensate said first named company to the extent of two-thirds of the value of said site.

"It is therefore ordered, adjudged, and decreed by the Railroad Commission that the St. Louis Southwestern Railway Company of Texas and the Trinity & Brazos Valley Railway Company each pay to said Missouri, Kansas & Texas Railway Company of Texas one-third of the reasonable and fair value for the real estate so used by said railroads in pursuance of this order for union depot purposes.

"It is further ordered, adjudged, and decreed by the Railroad Commission of Texas that the cost of the construction of said depot building be prorated between said railroad companies, and each of them, on a basis of one-third to each company; that is to say, it is ordered that the Missouri, Kansas & Texas Railway Company of Texas pay one-third of the cost of the construction of said depot building, the St. Louis Southwestern Railway Company of Texas shall pay one-third of the cost, and the Trinity & Brazos Valley Railway Company shall pay one-third of the cost of construction of said depot building.

"It is further ordered, adjudged, and decreed by the Railroad Commission of Texas that said railroads be and they are hereby given a period of three months from this date in which to begin the construction of said depot building and twelve months from this date in which to have said building, together with all necessary tracks leading thereto, completed and in operation.

"Allison Mayfield,
"Chairman.
"O. B. Colquitt.
"William D. Williams,
"Commissioners.
"Attest: E. R. McLean, Secretary."

5. Said order was made and entered after a full hearing at which all of appellees were before said commission, and the previous notices were duly served on appellees, and the previous orders were made by said commission as recited in said order of January 17, 1911.

6. The present passenger facilities of each of appellees in Hillsboro, Tex., are inadequate and insufficient to the needs of the business of said station, and for the proper accommodation of the traveling public.

7. The construction, operation, and maintenance of a union passenger depot at said station jointly by appellees, as ordered by the Railroad Commission, is both feasible and practicable, is just and reasonable to appellees, and demanded by the public interest.

8. Appellees cannot agree among themselves as to the construction of said depot, either as to location of same or the cost or apportionment of costs of constructing or maintaining the same.

9. The site, plans, and specifications and prorating of the costs of erecting, operating, and maintaining a union depot at said station, as set out in said order of the commission of January 17, 1911, are not unjust or unreasonable to appellees or either of them.

10. Each of the appellees has disobeyed said order, and all previous orders of said commission in reference to said union depot.

11. This suit was brought by the Attorney General of Texas in obedience to an order of said commission, made and entered on January 22, 1912.

12. In the trial before the court, judgment was rendered for appellees.

### Opinion.

The appellees will be referred to in this opinion as the Katy, the Cotton Belt, and the T. & B. V., as these are the names by which they are commonly known.

[1] 1. The findings of fact found by the trial court as to reasonableness and public necessity were the reverse of those found by us. Ordinarily we would feel bound by the findings of fact by the trial court, unless it clearly appeared that such findings were wrong. In this case, however, we regard the Railroad Commission as occupying the place ordinarily occupied by a trial court. The duty devolved upon it primarily to ascertain the facts. The suit before the district court upon appellees' answer was in the nature of an appeal from the findings of the commission. The statute provides that in such suits the burden rests upon the party complaining of the orders of the commission to show, "by clear and satisfactory evidence," that the orders complained of are unjust and unreasonable. Article 6658, R. S. 1911; Commission v. Chamber of Commerce, 105 Tex. 101, 145 S. W. 580; Ry. Co. v. Commission, 102 Tex. 353, 113 S. W. 741, 116 S. W. 795. The findings of fact by the commission upon which its orders are based are to be taken as prima facie correct. Revisory power is lodged in the court, but "it was not intended that we (nor the trial court) should substitute our judgment for that of the commission every time there is a dispute touching the particular place on the line of a railroad where it would be best for the public interest that a station or a depot should be placed." Ry. Co. v. Ry. Com., 109 La. 247, 33 South. 214. In this case the evidence is conflicting;

hence our findings of fact are made in conformity with the facts found by the Railroad Commission.

[2] 2. Appellees, in their several answers, alleged the orders of the commission herein sought to be enforced were unjust and unreasonable as to each of them. Appellant excepted to these answers, upon the ground that, inasmuch as the statute gave the appellees the right to file suit in the district court of Travis county to have the orders of the commission set aside, as being unjust and unreasonable as to them, this remedy was exclusive, and that, as they had not availed themselves of this privilege, the matter of the reasonableness of said orders was res adjudicata. This exception was by the trial court overruled, and the issue thus raised is presented to us under proper assignments.

Appellant cites numerous authorities in support of its proposition that, where an exclusive remedy is given, none other will be allowed. We concede the correctness of appellant's proposition, and also that the statute gave appellees a remedy, as alleged by appellants. But we hold that, under our system of pleading, appellees are substantially invoking their statutory remedy in this suit. Appellant alleged that the orders of the commission sought to be enforced herein were just and reasonable. Appellees not only plead a general denial, but also alleged that said orders were unjust and unreasonable as to them, by reason of certain alleged facts which they specifically set out, and which, if true, would entitle them to have had said orders set aside in a suit brought for that purpose. The Cotton Belt and the Katy specifically pray that said orders be declared void, and the T. & B. V. prays for judgment in its favor, which is equivalent to a prayer to set aside and annul said orders. These special answers are not styled pleas in reconvention, or cross-bills eo nomine, but they amount to such. It is well settled in this state that a party may obtain affirmative relief on a plea in reconvention or a cross-bill as to matters growing out of the same transaction between the same parties. Such pleas have all of the characteristics, as well as the force and effect, of an original suit, and, upon dismissal of plaintiff's suit, the cause may proceed to judgment upon such answer.

Here the allegations upon which appellees seek relief are the identical allegations which it would have been necessary for them to have made in an original suit to set aside said orders; they are filed in the court in which it would have been necessary to have filed such suit, and are supported by the identical evidence that would have been relevant in such original suit. We think that it would be too narrow and technical a view of our system of pleading to say that appellees should not have been permitted, if they could do so, to prove in this proceeding that the orders of the commission were unreasonable and unjust as to them. Castro v. Gentiley, 11 Tex. 28, and authorities there cited; Cannon v. Hemphill, 7 Tex. 205; Cunningham v. Wheatly, 21 Tex. 184.

[3] 3. We might well have rested our conclusion, as set forth in the next preceding division of this opinion, upon the fact that appellant did not plead res adjudicata in this case, and urged no such objection to the testimony offered by appellees as to the unreasonableness of the orders of the commission, and no such issue was raised by appellant in its motion for a new trial. Houston v. Walsh, 27 Tex. Civ. App. 121, 66 S. W. 109; Bank v. Claxton, 77 S. W. 47.

[4, 5] 4. The Cotton Belt and the T. & B. V. have filed a cross-assignment of error to the action of the court in overruling their general demurrer. Their contentions under the assignment are: (1) That the only authority upon which the Legislature could empower the Railroad Commission to make such order is the constitutional provision to "correct abuses"; (2) that an "abuse," as that term is used in the Constitution, must be defined by law; (3) that there is no law requiring railroads to build union depots. We concede the correctness of the first and second propositions above set out, but not the third.

5. The Constitution empowers the Legislature to correct abuses, and this power may be delegated to the Railroad Commission. Section 2, art. 10. But the commission is not authorized to enact a law declaring what shall constitute an abuse. This can be done only by the Legislature. In Railroad Commission v. Ry. Co., 90 Tex. 352, 38 S. W. 754, the court said: "What abuses can the Railroad Commission correct? We think that it must be some abuse that has been defined by the law, and that the commission would not by this power be authorized to enact a law defining what is an abuse or a disregard of duty on the part of a railroad corporation." But "a disregard of a duty" imposed by legislative enactment is an abuse. This is admitted by appellees, as will appear from the following excerpt from their brief: "It is clear that, if the Legislature should, by express enactment require a thing to be done, and then provide that a failure to do it should constitute an abuse, there could be no question of the sufficiency of the definition." It is not necessary that the Legislature should use the word "abuse." It is sufficient that it has by law imposed a certain duty on railroads, and provided a penalty for failing to discharge such duty.

[6] 6. The appellees assert that "the Legislature of Texas has never, by specific enactment or otherwise, made it the duty of two or more railroads reaching the same city or town to construct a union depot."

The second called session of the Thirty-First Legislature (Gen. Laws 1909, p. 399) passed a law which reads as follows:

"An act to confer authority upon the Railroad Commission of Texas to require railroad companies reaching the same city or town in this state to construct and maintain joint or union passenger depots; providing penalties, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. Where two or more railroad companies reach the same city or town in this state, it shall be the duty of the Railroad Commission of Texas to ascertain whether it is practicable and feasible for such railroad companies to use a joint or union passenger depot, and if the Railroad Commission finds upon investigation that it· is practicable for such railroad companies to join in the construction and· use of a passenger depot, then it shall give notice to said railroad companies, and, after investigation and public hearing, may require the construction and maintenance of such union passenger depot by the railroad companies entering any such city or town; provided that it shall appear to the Railroad Commission that the construction and maintenance of such joint or union passenger depot are just and reasonable to the railroad companies involved and demanded by the public interest. The Railroad Commission may specify the requirements of such union depot as to kind and character; and said Railroad Commission may apportion the cost of constructing and maintaining the same to each railroad company in cases where the interested railroad companies cannot themselves agree.

"Sec. 2. Failure upon the part of any railroad company to observe and obey the orders of the Railroad Commission, issued in compliance with section 1 of this act, shall subject such railroad company to the fines and penalties prescribed by law for failure to obey the lawful requirements, orders, judgments and decrees made by the Railroad Commission of Texas.

"Sec. 3. The fact that there is now no adequate law requiring two or more railroad companies entering the same city or town to construct and maintain union passenger depots, creates an emergency and an imperative public necessity requiring that this act be passed under the suspension of the constitutional rule requiring bills to be read on three several days, and the rule is therefore suspended and this act shall take effect and be in force from and after its passage, and it is so enacted.

"Approved May 10, 1909. Takes effect 90 days after adjournment."

We think a reasonable paraphrase of this act is that, when two or more railroads reach the same town, they shall be required to construct and maintain a union depot of the kind and character suitable to the needs of the station and demanded by the public interest, if the erection of such depot is practicable and feasible and just and reasonable to the railroads; and the existence or nonexistence of such facts shall be determined by the Railroad Commission. It is not left to the commission to enact the law requiring railroads to build union depots, as appellees contend. The Legislature has done that. It is only left to the commission to ascertain the existence of the facts upon which said law becomes applicable. Had the Legislature enacted that union depots should be built wherever the facts above set out existed, without naming any tribunal to determine their existence, any one having the requisite interest in the subject-matter could, by suit in the district court, have compelled the erection of such depot upon proof of the existence of such facts. Is the law any less valid because it leaves the determination of these facts, in the first instance, to a commission of able and experienced men, rather than to a court? Is the Railroad Commission less capable of determining the existence or nonexistence of these facts than a judge or jury? Ought railroad companies be heard to complain that the ascertainment of these facts is referred in the first instance to such a commission, when they are given the right of appeal to a district court? We must answer these questions in the negative.

Our view of the law on this issue is ably presented in an opinion by the Supreme Court of Pennsylvania in Lock's Appeal, 72 Pa. 491, 13 Am. Rep. 716. The Legislature of Pennsylvania passed a local option law, forbidding the issuance of license in districts where a majority of the voters voted against such license. It was the contention of the appellant that this act attempted, in effect, to delegate to the people of the various districts the power to enact by their votes a law forbidding the licensing of saloons in such districts. We quote from said opinion as follows: ."The Legislature, in the act of 1871, have given to the people a *law*, not a mere *invitation;* needing no ratification, no popular breath to give it vitality. The law is simply ·contingent upon the determination of the fact whether licenses are needed, or are desired, in this ward. And why shall not the Legislature take the sense of the people? Is it not right of the Legislature to seek information of the condition of a locality, or of the public sentiment there? The Constitution grants the power to legislate, but it does not confer knowledge. The very trust implies that the power should be exercised wisely and judiciously. Are not public sentiment and local circumstances just subjects of inquiry? A judicious exercise of power in one place may not be so in another. Public sentiment or local condition · may make the law unwise, inapt, or inoperative in some places, and otherwise elsewhere. Instead of being contrary to, it is consistent with, the genius of our free institutions ·to take the public sense in many instances that the legislators may faithfully represent the

people and promote their welfare. So long, therefore, as the Legislature only calls to its aid the means of ascertaining the utility or expediency of a measure, and does not delegate the power to make the law itself, it is acting within the sphere of its just powers. * * * To assert that a law is less than a law because it is made to depend on a future event or act is to rob the Legislature of the power to act wisely for the public welfare, whenever a law is passed relating to a state of affairs not yet developed, or to things future and impossible to be fully known. * * * Then the true distinction, I conceive, is this: The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government."

The facts of the instant case make it much stronger for the application of the principle enunciated in Lock's Appeal, supra, than did the facts in that case. There the fact, ascertained by the vote of the people of a particular district, was that the general conditions there existing rendered it desirable that the law forbidding the sale of intoxicating liquors should be applied to that district. Here the commission is required to ascertain, after full hearing, certain specific facts, in order to make the law requiring railroads to build union depots applicable to a particular place. The Railroad Commission did not enact a law requiring a union depot to be built at Hillsboro. It only ascertained the existence of the facts which made the law enacted by the Legislature requiring union depots to be built applicable to Hillsboro.

In Moers v. City of Reading, 9 Harris (21 Pa.) 202, Mr. Chief Justice Black, speaking for the court, said: "Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law."

As instances illustrative of the principle here under discussion, we cite the issuance of bonds by counties and incorporated cities, formerly upon the order of commissioners' courts and city councils, and now upon referendum vote of the people. Neither the commissioners' courts, the city councils, nor the people, in such cases, can be said to have enacted the law under which the bonds were issued, but only to have determined the circumstances under which the law enacted by the Legislature became applicable to their respective localities. In the well-considered case of Slack v. R. R. Co., 13 B. Mon. (Ky.) 25, the court said: "It is no objection to the constitutionality of such statutes that they depend, for their final effect, upon the discretionary acts of individuals or others."

[7] 7. We have no doubt as to the constitutionality of the law requiring railroads to build union depots at such places and of such character as the Railroad Commission shall find necessary for the accommodation of the public, when it shall also have found the other facts required by the statute; but, if any doubt existed on this subject, it would be our duty to resolve it in favor of the statute. Courts should not hold laws unconstitutional, unless they are clearly so. Petterson v. Commissioners, 24 Tex. Civ. App. 42, 57 S. W. 1002. The power of the courts to nullify a law enacted by the lawmaking department of the government is one that should be exercised with great caution, especially so in matters pertaining to governmental policies, the public health, and public utilities.

[8] 8. It is contended by appellees that the order of the commission that the union depot should be built upon the site of the present passenger depot of the Katy is void, for the reason that the law does not authorize the commission to select sites for such depots. The appellees might have selected such site, had they seen proper to do so, provided such site had been a reasonable one. But the clear import of the statute is to require the construction of such depots, notwithstanding the failure or refusal of railroad companies to agree on such site. In such case, if the commissioners are not empowered to select the site, the railroad companies can nullify the statute by the simple expedient of refusing to agree on the site. The statute explicitly grants the commission the power to require railroads to build union depots, and this carries with it, by necessary implication, every power necessary to the accomplishment of such object. Courts ought not to resort to technicalities to override the clear import of a statute.

[9] 9. The appellees the Cotton Belt and the T. B. & V. also insist that the order of the Railroad Commission requiring them to join in the construction of a union depot on the site of the present passenger depot of the Katy should not be enforced, for the reason that said site is owned by the Katy, and it refuses to sell any interest therein to said appellees. It is a fact that said site is owned by the appellee the Katy, and that it has refused to sell any interest therein to either of the other appellees. But this is immaterial, as said appellees have the right to acquire, by condemnation proceedings, such interest in said land as is necessary for their depot purposes under the order of the commission. Article 6504, R. S. 1911. This article does not specifically mention union depots, but its provisions apply to all depots permitted or required by law.

[10] 10. Appellees the Cotton Belt and the T. & B. V. further insist that said order ought not to be enforced against them, for the reason that the Katy has outstanding mortgage bonds, which are a lien on said depot site, as well as all of its other real

estate, to amount of $34,000,000, and that its entire assets are only $36,000,000; that the holders of said bonds may foreclose on the same as they have a legal right to do in case of default, in which case said appellees would lose their investment in said union depot. The trial court found the facts as to the bonds and assets of the Katy to be as above stated, and the evidence sustains this finding. But this presents no obstacle to securing the necessary interest in said depot site free from such mortgage liens, as the bondholders could be made parties to such condemnation proceedings, and their equities fully protected. If railroad companies could not acquire lands for right of way or depot purposes, because such lands were mortgaged, this would mean an end to railroad building.

[11] 11. Appellees insist that the order of the commission should not be enforced, for the further reason that the Katy acquired said depot site by condemnation proceedings, and has no right to use, or permit the same to be used, for any purpose other than that for which it was condemned, viz., for a passenger depot for the said railway company. The original owner of said site could be made a party to a second condemnation proceeding, in which he would be allowed such additional damages, if any, as he could show himself entitled to by reason of the change of said site from a passenger depot for the Katy railroad to a union depot of all of the appellees.

[12] 12. As to the penalties sued for, it is well settled that statutes giving the right to recover penalties should be strictly construed in favor of those against whom penalties are sought to be enforced. It appears that the refusals of the appellees to obey the orders of the Railroad Commission in reference to a union depot at Hillsboro were intentional and persistent, but we are of the opinion that, in doing so, they were not acting willfully, in the sense of intentional wrongdoing, but that they were standing upon what they, under the advice of counsel, believed to be their legal rights. Therefore we will deny the prayer of the appellant for the recovery of penalties, but will grant it the relief prayed for as to mandamus and mandatory injunction.

For the reasons above set out, the judgment of the trial court is affirmed, in so far as said judgment denies the right of appellant to recover the penalties sued for; but said judgment is here reversed and rendered in favor of appellant to the extent of granting it a writ of mandamus or mandatory injunction, as prayed for in its petition herein.

Affirmed in part, and in part reversed and rendered.

## On Motion for Rehearing.

In the first paragraph of our opinion herein, we said: "In this case, however, we regard the Railroad Commission as occupying the place ordinarily occupied by a trial court. The duty devolved upon it primarily to ascertain the facts. The suit before the district court, upon appellees' answer, was in the nature of an appeal from the findings of the commission." This language may admit of a construction that we did not intend. We did not mean to say that we were called upon to review the evidence adduced before the commission. We have no knowledge as to what such evidence was. The only testimony in the record is that given in the district court upon the trial of this case, and upon such trial it would not have been permissible to prove what was testified to before the Railroad Commission, except by way of impeaching a witness. What we meant by the language above quoted is that, inasmuch as the statute makes the orders of the commission binding, unless the party complaining of the same shall prove by clear and satisfactory evidence that they are unreasonable and unjust to him, an appellate court must indulge in favor of such orders all the presumptions that are given by law to the judgment of a trial court. That is to say, it must be presumed that an order so made was justified by the facts in the case, until the contrary is clearly and satisfactorily shown by the testimony adduced in the district court in a suit to set aside such order.

[13] We have carefully re-examined the record in this case, and have concluded that we were in error in holding that the evidence justified us in finding that the orders of the Railroad Commission of Texas were not unjust and unreasonable to appellees the Cotton Belt and the T. & B. V. in so far as said orders required each of said roads to pay one-third of the value of the ground upon which the union depot was ordered to be constructed, and one-third of the cost of erecting and maintaining said depot. There is evidence in the record from which it might be inferred that said orders were, in this respect, unjust and unreasonable as to said appellees; but the case does not seem to have been as fully developed on these points by either party as it should have been. We think this case ought to be remanded, in order that these issues of fact should be again submitted to and specifically passed upon by the trial court. See Miller v. Hobdy, 159 S. W. 96, recently decided by this court on motion for rehearing.

We adhere in all other respects to our opinion herein, but, for the reason above stated, we reverse and remand this cause to be tried in accordance with said opinion, and with this additional opinion on motion for rehearing. Accordingly the motion for rehearing is granted, and this cause is reversed and remanded.