STATE OF NORTH CAROLINA ex rel. CORPORATION COMMIS-
SION v. SEABOARD AIR LINE and SOUTHERN RAILWAY
COMPANIES.

(Filed 4 December, 1912.)

1. Railroad Commission—Union Depots—Appeal—Superior Court—
Trial de Novo—Evidence—Practice.

On appeal from an order of the Corporation Commission re-
quiring two railroads operating in the same town to have a joint
or union depot there for passengers, the trial is *de novo* by ex-
press provision of the statute and tried under the same rules
and regulations as are prescribed for the trial of other civil
causes; and any relevant evidence may be there introduced,
whether it had theretofore been introduced before the Commis-
sion or not.

2. Railroads—Corporation Commission—Union Depots—Requisites
of Order—Effect on Other Town—Evidence—Appeal and Error.

Revisal, sec. 1097, empowers the Corporation Commission to
direct two railroads operating in the same town to have a joint
or union depot. for their passengers, when practicable, or the
necessities of the case require it for the security, accommoda-
tion, and convenience of the traveling public; and in this case,
wherein a union passenger depot had been ordered by the Com-
mission at Rutherfordton, it was *Held*, reversible error in the
Superior Court, on appeal from the Commission, for the trial
judge to admit evidence as to the effect the relocation would
have on property values at Hamptonville, a near-by town, where
the present station of one of the roads is located.

APPEAL by plaintiff from *Justice, J.,* at January Term, 1912,
of RUTHERFORD.

This is an appeal from the Corporation Commission from
the findings and judgment of the Commission upon the petition
of the citizens of Rutherfordton against the above defendants,
requiring them to establish a union depot.

The following issues were submitted to the jury:

1. Is the establishment and maintenance of the proposed
union depot at or near the Seaboard Air Line depot necessary
to the convenience and accommodation of the traveling public?
Answer: No.

2. Is it practicable for the Southern Railway Company and the Seaboard Air Line to be required to construct and maintain a union passenger station at the town of Rutherfordton? Answer: No.

3. Do the necessities of the case require that the Southern Railway Company and the Seaboard Air Line Railway Company construct and maintain a union passenger station at the town of Rutherfordton? Answer: No.

4. Has the Seaboard Air Line Railway a depot which is adequate and convenient and offers suitable accommodations for the traveling public? Answer: No.

5. Has the Southern Railway Company a depot which is adequate and convenient and which offers suitable conveniences for the traveling public? Answer: Yes.

6. What is the distance between the present Southern depot and the proposed union depot? Answer: Not over 1½ miles.

Upon the findings of the jury, the court rendered a judgment dismissing the proceedings, from which the plaintiffs appeal.

*M. L. Edwards, C. R. Hoey, R. S. Eaves for plaintiffs.*
*O. Max Gardner for defendants.*

BROWN, J. The first assignment of error is as follows: "The court ruled that the case stood for trial as other civil actions; that orders made by the Corporation Commission were *prima facie* just and reasonable; and that each side, plaintiff and defendant, had the right to offer any competent evidence in addition to the evidence offered before the Corporation Commission upon the hearing before it."

We are of opinion that his Honor was correct in trying the case before a jury *de novo*. The statute requires that appeals from the Commission shall have precedence of other civil actions, and shall be tried under the same rules and regulations as are prescribed for the trial of other civil causes, except that the rates fixed on the decision or determination made by the Commission shall be *prima facie* just and reasonable.

It necessarily follows, therefore, that neither the plaintiff nor the defendants are confined to the testimony submitted to the Commission. One of the earliest appeals from the Commission

was the *Selma Railroad Connection Case,* 137 N. C., page 2. In that case the appeal was tried in the Superior Court of Wake County upon issues submitted to the jury upon the trial, of which both parties were permitted to offer all the testimony, whether submitted to the Commission or not, which was relevant to the matter in dispute.

There are several assignments of error relating to the reception of evidence by the court which the plaintiff insists was incompetent and introduced into the trial an element entirely outside of the statute. These exceptions all relate to the testimony of witnesses as to what effect a union passenger station at Rutherfordton would have upon the adjacent village of Hamptonville.

It appears that Hamptonville is a thriving village of some 264 inhabitants, situated 1½ miles from Rutherfordton, and that the station of the Southern Railway at Hamptonville is now and always has been the station provided for the accommodation of the town of Rutherfordton.

His Honor permitted the witnesses to testify as to what would be the effect of the establishment of a union depot in Rutherfordton upon the property interests of the village of Hamptonville. Witnesses testified it would greatly depreciate the value of the property of the said village.

Other witnesses were permitted to testify that if the union depot was established where the Corporation Commission designated it, or near the present Seaboard Air Line depot, and the depot at Hamptonville abolished or its facilities diminished, it would result in the ruin of the said town, and that the business enterprises there would have to close up.

J. C. Hampton, a witness for the defendant, was permitted to testify that the establishment of a union depot at the proposed site, together with the discontinuance of the depot at Hampton or a decrease of the facilities there, would be like taking bread out of the mouths of the people of Hamptonville. We think it was error upon the part of the court to permit the introduction of this kind of testimony bearing upon the property interests of the village of Hamptonville.

It is true, his Honor laid no stress upon this evidence in his charge to the jury, and in a measure endeavored to neutralize its effect upon the jury, but we think that so much of this evidence was permitted to be introduced that its effect upon the jury must have been very potential. It tended to raise an issue between the town of Rutherfordton and the village of Hamptonville to such an extent that the jury might well have lost sight of the real issues to be passed on by them.

Under section 1097, Revisal of 1905, the Corporation Commission is empowered to direct the establishment of union stations under certain conditions, to wit: when practicable, and when the necessities of the case require two or more railroads entering a city or town to have one common union passenger depot for the security, accommodation, and convenience of the traveling public.

When these conditions are found to exist, then the two railroads may be compelled to unite in the erecting, constructing, and maintaining such union passenger depot commensurate with the business and revenues of such railroad companies on such terms, regulations, provisions, and conditions as the Corporation Commission shall prescribe.

We think that the evidence elicited from the witnesses did not bear upon any of the essential facts necessary to be used in this case and was calculated to divert the attention of the jury from the real issues before them.

The caution given to the jury by his Honor in his charge could not very well remove entirely from the minds of the jury the impression produced by such testimony. For these reasons we feel impelled to order another trial.

New trial.

CLARK, C. J., concurring: Revisal, 1097 (3), "empowers and *directs*" the Corporation Commission, whenever "in their judgment" it will make "for the security, accommodation, and convenience of the traveling public," to "require" a union passenger station to be established wherever two or more railroads shall enter any city or town. In *Dewey v. R. R.,* 142 N. C., 392, this section was held valid, and that the authority thus

conferred on the Commission should receive a liberal construction in favor of the power, and it was held further that it was intended to apply to all cities and towns in the State where the Commission should find it to be practicable.

Whenever the Commission requires and orders a union station to be built, the only restriction in the statute is when "practicable." The other matters as to the security, accommodation, and convenience of the public are simply reasons addressed to the judgment of the commissioners. When there is an appeal from their order, the sole query for a jury, under the statute, is whether the execution of the order is "practicable." The finding of the Corporation Commission that it is practicable is *prima facie* correct; and the burden is upon the defendant to show evidence to the contrary. In this case none was shown, and the judge should have directed a verdict affirming the order of the Corporation Commission.

The evidence whether the establishment of a union station for the accommodation and convenience of the traveling public at a point near Rutherfordton would be injurious to the interests of another station at Hamptonville was both incompetent and prejudicial, and a new trial is ordered on that ground.

Formerly, when a person started from Raleigh to New York he was compelled to leave the cars at the edge of Petersburg and be carried, together with his baggage, on conveyances through the city to the station on the other edge of the city. Exactly the same thing happened at Richmond, 22 miles further on, and again at Washington, and again at Baltimore, and again still at Philadelphia. Such annoyance and inconvenience to travelers by the antiquated method of people being conveyed through a city from one railroad station to another have long since been abolished nearly everywhere except in North Carolina. The object of this statute was to abolish it in this State in every case where it is "practicable" to do so, and there is probably not a place in the State where it is not practicable.

The courts have always held that railroads are built primarily for the convenience and accommodation of the public. *U. S. v. Freight Association,* 166 U. S., 322; *Wisconsin v. Jacobson,* 179 U. S., 296; *R. R. Connection Case,* 137 N. C., 18, citing

above. It is for this reason alone that they are given the power of eminent domain to condemn rights of way and have often had the benefit of bonds voted by the State, counties, and towns. That they shall be profitable to their owners is a secondary consideration to the State, however it may be with the owners themselves. Every other business considers the convenience and desires of the patrons from whom their business and their profits are derived. It is strange that any railroad company will resist the demand of any community or of the traveling public for a union station or better conveniences, since compliance is almost always profitable, as has been proven by the effect of the legislation requiring lower passenger rates and in many other instances. Because the managers of these corporations often do oppose the public demand for betterments and conveniences, the law creating the Corporation Commission was passed. The direction to them to order union stations in all towns where there are two or more railroads is imperative when in *their* judgment the convenience and accommodation of the traveling public require it, and their power is limited only by one qualification, "when practicable."

In this case the Corporation Commission found as a fact that a union station at Rutherfordton was "practicable," and there was no evidence to the contrary. The court, in my opinion, should have submitted the only issue contemplated by the statute, *i. e.,* whether the establishment of the union station was "practicable," and on the evidence should have directed a verdict and entered judgment affirming the order of the Commission.