GULF, C. & S. F. RY. CO. et al. v. STATE.
(No. 5350.)

(Court of Civil Appeals of Texas. Austin.
April 29, 1914. Rehearing Denied
May 27, 1914.)

1. CONSTITUTIONAL LAW (§ 62*)—RAILROADS (§ 58*)—DELEGATION OF POWER TO RAILROAD COMMISSION—UNION DEPOT.

Gen. Laws (2d Extra Sess.) 31st Leg. c. 10 (Rev. St. 1911, arts. 6695, 6696), declaring that, where two or more railroads reach the same city, the Railroad Commission shall ascertain whether a union depot is practicable, and, if it is, the Commission shall give notice to them and, after investigation and public hearing, may require the construction and maintenance of such union depot, provided the construction and maintenance is just and reasonable to the railroads and demanded by public interest, and that the Commission may specify the requirements of such depot, is in effect a declaration that railroads shall, under certain conditions, construct and maintain a union depot, leaving to the Commission merely the determination in the first instance .whether these conditions exist, which is not a delegation of legislative power and does not invalidate the law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62;* Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. § 58.*]

2. CONSTITUTIONAL LAW (§ 297*)—DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS—WHAT CONSTITUTES.

Such statute works no deprivation of property without due process of law, contrary to Const. U. S. Amend. 14, and Const. Tex. art. 1, § 19, because, before any action can be taken by the Commission after determining that a union depot is practicable, the Commission must give notice to the companies, after which follows an investigation and public hearing, before any order can be made requiring the construction of such depots.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 832–834; Dec. Dig. § 297.*]

3. CONSTITUTIONAL LAW (§ 62*)—DELEGATION OF LEGISLATIVE POWER.

Such statute is not invalid as investing the Railroad Commission with power at their option to enforce or waive it; it merely placing upon the Commission the duty of ascertaining whether facts exist at any particular place which would authorize the Commission to order the construction and maintenance of a union depot.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102; Dec. Dig. § 62.*]

4. RAILROADS (§ 58*)—RAILROAD COMMISSION—ORDER FOR UNION DEPOT.

An order by the Railroad Commission under Gen. Laws (2d Extra Sess.) 31st Leg. c. 10 (Rev. St. 1911, arts. 6695, 6696), for the construction of a union depot by two railroad companies, whose lines intersected in a town, is not too vague for enforcement because it left to the railroad companies the right to determine the location and the character of the depot, and merely required them within 30 days from the date of the order to report the kind and character of the building they expected to erect, together with plans and specifications thereof for approval by the Commission.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. § 58.*]

5. MANDAMUS (§ 176*)—RAILROAD DEPOTS—COMPELLING SUBMISSION OF PLANS.

In mandamus to compel railroad companies to obey an order of the Railroad Commission requiring them to present plans and specifications for the construction of a union depot, the court may issue a writ commanding the railroad companies to submit plans and specifications for a union depot to the Railroad Commission, for the court is not restricted to the mere issuance of a writ of mandamus commanding the construction of a union depot which might neither meet the approval of the Commission nor serve the public.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 392–394; Dec. Dig. § 176.*]

Appeal from District Court, Travis County; C. A. Wilcox, Judge.

Action by the State of Texas against the Gulf, Colorado & Santa Fé Railway Company and another. From a judgment for the State, defendants appeal. Affirmed.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, Alex S. Coke, of Dallas, Fiset, McClendon & Shelley, of Austin, and A. H. McKnight, of Dallas, for appellants. B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State.

Statement of the Case.

RICE, J. For many years prior to the institution of this suit, appellants have operated their respective lines of railway into and through the town of Celeste in Hunt county, crossing each other practically at right angles, during most of which time they have maintained distinct and separate depots about 440 yards apart, necessitating a transfer of passengers and baggage from one depot to the other. On May 3, 1910, a petition, signed by 109 citizens of said town, was presented to the Railroad Commission of Texas, complaining of such conditions, and requesting it, after stating the above facts, to order appellants to build and maintain a union passenger depot at said place. In response thereto, the Railroad Commission of Texas, on the 11th day of July, 1910, made and entered the following order, to wit, after stating the number and style of the case:

"The above numbered and entitled cause, in pursuance of notice duly given, having been called for hearing by the Railroad Commission of Texas at its June term, 1910, and the Commission having heard the evidence offered and facts presented pertaining to the matters covered by the petition and the notice herein, and having duly considered the same, and having also inspected the physical conditions with respect to the location of a union passenger depot building at said station, is of opinion ·that the present passenger depot facilities of the railway lines entering the town of Celeste are inadequate and insufficient to the needs of the traveling public, and that the construction, operation, and maintenance of a union passenger depot in said town of Celeste, jointly by the railway companies hereinafter named, and whose lines enter said town, is both feasible and practicable, is just and reasonable to the railroad companies involved, is demanded by the public interest, and will be mutually beneficial to said railroad companies and the traveling public: Therefore, by virtue of the authority conferred upon it by

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

law, it is hereby ordered by the Railroad Commission of Texas that the Missouri, Kansas & Texas Railway Company of Texas and the Gulf, Colorado & Santa Fé Railway Company be and they are hereby ordered and required to construct, operate, and maintain a union passenger depot building in the town of Celeste, Tex.; said depot building to be located so as to best serve the purpose for which it is intended, and the expense of construction, maintenance, and operation of said depot to be prorated between the said railway companies upon such basis as they may determine among themselves. It is further ordered by the Railroad Commission of Texas that, upon the completion of said union passenger depot building, all passenger trains operated by the above-named railway companies to or from the town of Celeste shall be operated to or from said union depot. It is further ordered, that, within 30 days from this date, plans and specifications for the depot building, hereinbefore required to be constructed, be prepared and submitted to this Commission at its office in the Capitol at Austin, in order that it may judge of the adequacy thereof and for its approval, and said depot building be constructed and ready for occupancy on or before October 15, 1910."

This order was wholly ignored by the appellants, and this suit was thereafter, on January 19, 1912, brought by the state, at the instance of the Railroad Commission, against both of them to enforce compliance therewith, and to recover the penalty of $5,000 on account of their failure so to do.

Appellants answered by general and special exceptions, by which they assailed the validity of said order (1) on the ground that the act conferring authority on the Railroad Commission to make same was unconstitutional and void, in that it conferred legislative authority upon said Commission; (2) on the ground that it was the taking of the property of said appellants without due process of law and in violation of the fourteenth amendment to the Constitution of the United States, and of section 19, art. 1, of the Constitution of this state; (3) that it conferred authority upon said Commission to suspend or put in operation the law, at its option; (4) that said order was too vague and indefinite, in this, that it failed to name the place where said depot should be located; and (5) that the order did not prescribe the kind, character, quality, size, cost, or otherwise describe or define the depot that was to be erected thereunder. They also pleaded the general issue and specially averred that their present depots were adequate and confortable, and no necessity existed for the construction of a union depot at said place; that the public interest did not require it; and that the order of the Commission, as set up in the petition, was unreasonable, arbitrary, and unjust.

The case was tried before the court without a jury, and resulted in a judgment on the 21st of October, 1913, overruling all of said exceptions, and awarding mandamus and mandatory writs of injunction compelling said railway companies to construct a union passenger depot at said place, and to have the same completed and ready for occupancy within 90 days from the date thereof. The

167 S.W.—13

judgment further required said companies to prepare and submit to said Commission, within 30 days from final judgment, plans and specifications of such union passenger depot for the approval of the Commission. It further required appellants to agree among themselves upon a basis for the division and prorating the cost of such building, and that, in the event they could not do so within 30 days from the date of final judgment, then such fact should be certified to the Railroad Commission, which would then apportion the costs between them. It was further ordered that the state recover nothing by way of penalties on account of the failure and refusal to obey said order, from which judgment this appeal is prosecuted.

The trial court found the following conclusions of fact and law, which we adopt:

### "Findings of Fact.

"(1) I find that on the 11th day of July, 1910, and for a long time prior thereto, and continuously since said date, the defendants, Gulf, Colorado & Santa Fé Railway Company and the Missouri, Kansas & Texas Railway Company of Texas, has each controlled and operated a line of railroad within this state, running into and through the town of Celeste, in Hunt county, Tex., and that defendants' said lines of railroad and tracks intersect and cross at and in said town of Celeste.

"(2) I find that on the 11th day of July, 1910, the Railroad Commission of Texas, after legal notice to the defendants, and after a hearing upon the matters involved, ordered the said defendants to construct, operate, and maintain a union passenger depot building in said town of Celeste; said order as it appears in the statement of facts being here referred to and incorporated as a part of this finding.

"(3) I find that the defendant Gulf, Colorado & Santa Fé Railway Company upon the date above referred to, and at this time, owns and operates a depot in said town of Celeste, which depot is old and inadequate for the reasonable needs at said place; said depot is situated so as to be reasonably convenient and accessible to the citizens of Celeste having occasion to use the same.

"(4) I find that the defendant Missouri, Kansas & Texas Railway Company of Texas owns and operates a depot within the town of Celeste situated about 440 yards, by the most practicable route, from the Gulf, Colorado & Santa Fé depot. The depot of the Missouri, Kansas & Texas is reasonably adequate and reasonably convenient and accessible to the people of Celeste.

"(5) I find that it would be feasible and practicable for the defendant railway companies to construct and operate a union passenger depot at or near the junction of their lines of railroad. Such point would be about an equal distance from the main business portion of the town as is the present depot of the Gulf, Colorado & Santa Fé Railway Company, and would be about 100 yards nearer to the main business portion of the town than is the present depot of the Missouri, Kansas & Texas Railway Company.

"(6) I find that from four to five passengers having through tickets requiring a transfer from one of said roads to the other at said town of Celeste transfer at said point each month. I find further that each day a number of persons entering the town of Celeste over the line of one of said defendants upon local tickets leave the said town on the same day upon the line of the other defendant. Some of these, in order to make their connections, are required to go im-

mediately from one station to the other; and these, together with the through passengers mentioned above, would be accommodated by a union depot. However, many passengers entering the town upon one line of railway and leaving by the other have business in the town of Celeste between trains, and would not be especially accommodated by a union depot.

"(7) I find that the union depot, if constructed at the junction of the two roads, would be reasonably convenient and accessible to the people of Celeste.

"(8) I find that it would not be practicable for the defendant railway companies to consolidate their freight depots, and that the maintenance of a union passenger depot would require the employment of one or two additional persons to operate same, at a monthly expense of about $50 to each company, over and above the cost of the service under the present arrangement.

"(9) The construction of a union depot at the junction of the two roads would require each of the defendants to remove or rearrange some of their tracks; and that the stopping of passenger trains at such point would probably operate at times to slightly delay trains on the other line.

"(10) I find that, under the present arrangements, the railroad companies pay the expense of transferring through passengers and mail from one depot to the other, which expense would be obviated, should a union depot be built.

"(11) I find that each of the defendant railroad companies failed and refused to obey the order of the Commission requiring the construction of a union depot; they being doubtful of the power of the Commission in the premises, and desiring to test the validity of said order.

"(12) I find that the order of the Commission above referred to is not shown, by clear and satisfactory evidence, to be unreasonable or unjust to the defendants or either of them.

### "Conclusions of Law.

"(1) I conclude that the act of the Legislature, under which the order of the Commission was entered, is valid and constitutional.

"(2) I conclude that the Railroad Commission of Texas had the authority to enter the order requiring the defendants to construct a union depot at Celeste, and that said order is valid and binding upon the defendants, and each of them, and that the state is entitled to the writs of mandamus and mandatory injunction compelling the enforcement of said order."

### Opinion.

[1] The first exception urged by appellants is that said order was void for the reason that the act of the Legislature upon which it was based did not impose the duty upon railway companies of constructing and maintaining union depots, but undertook to confer this power upon the Commission itself, and was therefore in contravention of the Fourteenth Amendment to the Constitution of the United States, and of section 19, art. 1, of the Constitution of Texas. The law upon which this order is based reads as follows:

"Where two or more railroad companies reach the same city or town in this state, it shall be the duty of the Railroad Commission of Texas to ascertain whether it is practicable and feasible for such railroad companies to use a joint or union passenger depot; and, if the Railroad Commission finds upon investigation that it is practicable for such railroad companies to join in the construction and use of a passenger depot, then it shall give notice to said railroad companies, and, after investiga-

tion and public hearing, may require the construction and maintenance of such union passenger depot by the railroad companies entering any such city or town: Provided, that it shall appear to the Railroad Commission that the construction and maintenance of such joint or union passenger depot are just and reasonable to the railroad companies involved, and demanded by the public interest. The Railroad Commission may specify the requirements of such union depot as to kind and character; and said Railroad Commission may apportion the cost of constructing and maintaining the same to each railroad company in cases where the interested railroad companies cannot themselves agree. Failure upon the part of any railroad company to observe and obey the orders of the Railroad Commission, issued in compliance with the preceding article, shall subject such railroad company to the fines and penalties prescribed by law for failure to obey the lawful requirements, orders, judgments and decrees made by the Railroad Commission of Texas." Articles 6695 and 6696 of the Revised Statutes of 1911.

See, also, Gen. Laws 31st Legis. 1909, p. 399.

With reference to said insistence it is sufficient to say that the question is no longer an open one in this state; it having been determined adversely to appellants' contention by this court in the case of State of Texas v. St. Louis Southwestern Railway Co. of Texas, 165 S. W. 491, in an opinion rendered May 21, 1913, not yet officially reported, in which a writ of error was denied by the Supreme Court of this state on December 10, 1913, in which opinion Mr. Justice Jenkins, in discussing this question, says:

"We think a reasonable paraphrase of this act is that, when two or more railroads reach the same town, they shall be required to construct and maintain a union depot of the kind and character suitable to the needs of the station and demanded by the public interest, if the erection of such depot is practicable and feasible and just and reasonable to the railroads; and the existence or nonexistence of such facts shall be determined by the Railroad Commission. It is not left to the Commission to enact the law requiring railroads to build union depots, as appellees contend. The Legislature has done that. It is only left to the Commission to ascertain the existence of the facts upon which said law becomes applicable. Had the Legislature enacted that union depots should be built wherever the facts above set out existed, without naming any tribunal to determine their existence, any one having the requisite interest in the subject-matter could, by suit in the district court, have compelled the erection of such depot upon proof of the existence of such facts. Is the law any less valid because it leaves the determination of these facts, in the first instance, to a commission of able and experienced men, rather than to a court? Is the Railroad Commission less capable of determining the existence or nonexistence of these facts than a judge or jury? Ought railroad companies be heard to complain that the ascertainment of these facts is referred in the first instance to such a commission, when they are given the right of appeal to a district court? We must answer these questions in the negative."

And after discussing and quoting with approval both from Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716, and Moers v. City of Reading, 9 Harris (21 Pa.) 188, and Slack v. Railroad Co., 13 B. Mon. (Ky.) 25, concludes by saying:

"We have no doubt as to the constitutionality of the law requiring railroads to build union depots at such places and of such character as the Railroad Commission shall find necessary for the accommodation of the public, when it shall also have found the other facts required by the statute; but, if any doubt existed on this subject, it would be our duty to resolve it in favor of the statute. Courts should not hold laws unconstitutional, unless they are clearly so. Petterson v. Commissioners, 24 Tex. Civ. App. 42, 57 S. W. 1002. The power of the courts to nullify a law enacted by the lawmaking department of the government is one that should be exercised with great caution, especially so in matters pertaining to governmental policies, the public health, and public utilities."

Without undertaking to add further reasons to those given in said opinion, we overrule the first assignment presenting this question.

[2] As to the second question raised, we differ with appellants in their contention that the statute above quoted deprives or tends to deprive them of their property without due process of law, or that it denies to them the equal protection of the law, within the meaning of the fourteenth amendment of the Constitution of the United States, or of section 19, art. 1, of our own Constitution, because before any action can be taken by the Commission, after determining that it is practicable and feasible for such railroad companies to use a joint or union passenger depot, it is made incumbent upon it to give notice to such companies, after which follows an investigation and public hearing, before any order can be made by the Commission requiring the construction of such depot. As well said by the Attorney General in his brief:

"In this instance the notice was given in due time and form to appellants, the matter was duly set down for public hearing by the Railroad Commission, and the appellants both appeared, answered, and contested the issuance of the order by argument and the presentation of evidence; these facts appearing in the face of the order. There was certainly no denial of due process or of equal protection of the law up to this point. The order having been made and promulgated, the appellants had the right, under the provisions of articles 6657 and 6658, R. S. 1911, to bring their suit in any court of competent jurisdiction in Travis county, state or federal. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 395 [14 Sup. Ct. 1047, 38 L. Ed. 1014]. This they did not choose to do. They simply neglected and refused to comply with the order. Thereupon this suit was instituted by the state to enforce the order. The suit having been instituted, the appellants thereupon filed their several· answers contesting by allegation, as they had a legal right to do under the terms of articles 6695 and 6696, as construed by this court in the case of State of Texas v. St. Louis Southwestern Railway Co. of Texas, supra, not only the authority of the commission to make the order, but also every fact upon which the order rested for reasonableness. The case was tried as an original action, and the matters of fact were traversed de novo, in the district court, and appellants were allowed to present by pleading, proof, and argument every defense, both of law and fact, which they had or desired to present. After a full and complete presentation of the issues, the questions of law and of fact were by the trial court resolved against them; from the judgment of the district court they had and exercised the right of appeal, as in other cases. They have not been denied any right of procedure, but, on the contrary, they were accorded and exercised every right which the law gives to any citizen by its judicial machinery. It is apparent at a glance, therefore, that no objection can be leveled at the judgment because of any departure from the forms of the law."

For the reasons stated, we overrule appellants' contention. See T. & N. O. Ry. Co. et al. v. Sabine Tram Co., 121 S. W. 256; Reagan v. Farmers' Loan & Trust Co., supra; Railway Co. v. Minnesota, 134 U. S. 458, 10 Sup. Ct. 462, 702, 33 L. Ed. 970.

[3] We do not think there is any merit in appellants' insistence that the act in question invested the Commission with power, at their option, to enforce or not enforce the statute. It merely placed upon the Commission the duty of ascertaining whether or not such facts exist at any particular place as would authorize it to act. Statutes similar in principle have been upheld by the courts of our own state. See M., K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Baldacchi v. Goodlet, 145 S. W. 325; Arnold v. State, 71 Tex. 239, 9 S. W. 120; Langenberg v. Decker, 131 Ind. 471, 31 N. E. 190, 16 L. R. A. 108; State v. Wood, 110 Ind. 82, 10 N. E. 639; Kuntz v. Sumption, 117 Ind. 1, 19 N. E. 474, 2 L. R. A. 655. The question at issue is entirely dissimilar, we think, to that presented by the facts in the case of Jannin v. State, 42 Tex. Cr. R. 631, 51 S. W. 1126, 62 S. W. 419, 96 Am. St. Rep. 821, wherein a law was declared unconstitutional which required agents of railway companies to stamp tickets before they could be used, making it a penal offense for a passenger to use such ticket without being stamped. Besides, if this case could be held in point, it would not be applicable here, since no penalty was imposed by the judgment for violation of the order of the Commission. We do not mean to hold by this suggestion, however, that a court could not impose the penalty denounced by statute against companies for a willful refusal to comply with a valid order of the Commission in this respect, nor that this act is invalid for the reason stated.

[4] It is urged by demurrer that the order was too vague and indefinite to be complied with, in that it did not designate the location of such depot, and failed to state the kind and character of building or structure required. We think it is unquestionably true that the Commission under this statute had the right to determine for itself the location, as well as the character and kind of depot that should be erected; but it was permissible, we think, for it to leave these matters of detail open to appellants, for the reason that these questions might be best determined by them. Their· common interests would cause them, it seems to us, to select some point for the location of such depot where their own, as well as the public, convenience would be

best subserved. In addition to this, the order itself required appellants, within 30 days from the date thereof, to report to it the kind and character of building they expected to erect, together with plans and specifications thereof, subject to its approval, by which we think they were, by implication at least, required to report the location thereof as well. But, be this as it may, we are inclined to the opinion that they have no right now to object to such order on account of its failure to designate a location, because they made no such objection when the matter was pending before the Commission; but, on the contrary, it is shown by their pleadings that they never intended to comply therewith unless compelled to do so by force of law. Hence the failure of the Commission in this respect did not influence their action, for which reason, under the circumstances, they must be held, we think, to have waived their right to object on this ground.

[5] By the twelfth assignment it is insisted that the court erred in rendering judgment requiring defendants to submit plans and specifications to the Railroad Commission of Texas for a joint depot at Celeste, Tex., because the court is without power to require the defendants to submit plans and specifications to the Railroad Commission of Texas for such a joint depot at Celeste, Tex., and in fact had no authority to render any judgment herein, except to award the writ of mandamus requiring the defendants herein to construct a joint depot at Celeste, Tex. If the Commission, in the first instance, as we have held, had the right to make the order requiring appellants to submit plans and specifications, which it is shown they refused to do, then it seems to us that the power should rest somewhere to require the appellants to submit such plans and specifications before undertaking to erect a depot, because, if they were not required to do so, then they might construct a depot at said point that would subserve neither the public interest nor be satisfactory to the Commission, which alone has the right to determine its adequacy. It seems to us that it was for the interest of appellants that such order should be made, so that they might know in advance whether the building to be erected would meet the approval of the Commission. We think the court had the right to make the order and overrule this assignment.

Believing that the order of the Commission above referred to has not been shown, by clear and satisfactory evidence, to be unreasonable or unjust to appellants, or either of them, we overrule all of the assignments complaining that the same was unjust and unreasonable to the companies involved, and not demanded by the public interest.

The remaining assignments, after due consideration, are regarded as without merit, and are overruled.

Finding no error in the judgment of the trial court, the same is in all things affirmed.

Affirmed.