[S. F. No. 13056. In Bank.—May 27, 1930.]

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[S. F. No. 13057. In Bank.—May 27, 1930.]

LOS ANGELES & SALT LAKE RAILROAD COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[S. F. No. 13058. In Bank.—May 27, 1930.]

SOUTHERN PACIFIC COMPANY (a Corporation) et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

E. W. Camp, Robert Brennan, M. W. Reed, E. T. Lucey, Leo E. Sievert, A. S. Halstead, E. E. Bennett, Fred E. Pettit, Jr., C. W. Durbrow, Frank Karr, Louis W. Myers and Guy V. Shoup for Petitioners.

Carl I. Wheat, Reginald L. Vaughan, Arthur T. George, Ira H. Rowell and Roderick B. Cassidy for Respondents.

Max Thelen, Edwin P. Werner, Jess E. Stephens and Milton Bryan, as *Amici Curiae*.

THE COURT.—This matter comes to us upon petitions for writs to review an order of the Railroad Commission of the state of California. Three separate petitions were filed, each carrier involved in the order objecting thereto. The cases have been consolidated in this court, as many of the matters urged in the attacks upon the order of the Commission are available to all the carriers affected by said order.

Said order of the Railroad Commission requires applicants to make and construct a union passenger station within that portion of the city of Los Angeles bounded by Commercial Street, North Main Street, Redondo Avenue, Alhambra Avenue and the Los Angeles River, together with such tracks, connections and all other terminal facilities and additions, extensions, improvements and changes in the existing railroad facilities of applicants as may be reasonably necessary and incidental to the use of said union passenger station, at a cost, as estimated or suggested in said order, of approximately $10,000,000 and in substantial compliance with the plans outlined by said Commission.

A similar order was made by the Railroad Commission in 1921, and a writ of *certiorari* to review this action of the Commission was obtained from this court, and in December, 1922, this court filed its decision annulling such order (*Atchison, T. & S. F. Ry. Co.* v. *Railroad Commission,* 190 Cal. 214 [211 Pac. 460]).

The Supreme Court of the United States, on *certiorari,* reviewed the judgment of this court annulling said orders of the Railroad Commission and affirmed said judgment. (*Railroad Com.* v. *Southern Pacific Co.,* 264 U. S. 331 [68 L. Ed. 713, 44 Sup. Ct. Rep. 376].) This case will hereinafter be referred to as the first Los Angeles Terminal case. In discussing the purposes and effect of the Transportation Act of 1920, the opinion of Mr. Chief Justice Taft, in said case, quotes from an earlier opinion written by him in another proceeding, as follows:

"The new act (Transportation Act of 1920) [41 Stats. at Large, 456] seeks affirmatively to build up a system of railways prepared to handle promptly all the interstate traffic of the country. It aims to give the owner of the railways an opportunity to earn enough to maintain their properties and equipment in such a state of efficiency that they can carry well this burden. To achieve this great purpose, it puts the railroad systems of the country more completely than ever under the *fostering guardianship* and control of the (Interstate Commerce) Commission, which is to *supervise* their issues of securities, their car supply and distribution, *their joint use of terminals,* their joint use of new lines . . . "

After this quotation, the opinion of Mr. Justice Taft continues: "On the one hand, it is urged that, with the purposes thus declared, the act commits to the *supervision and control* of the Interstate Commerce Commission such an undertaking as is here in question . . . On the other hand, it is earnestly contended that, since no specific provision is made for the *supervision* of interstate union stations by the Interstate Commerce Commission, *the whole subject* remains in the control of the state railroad commission."

After a detailed consideration of several sections of the Interstate Commerce Act, as amended, Justice Taft continues: "It is obvious from the foregoing that Congress intended to place under the *superintending and fostering direction* of the Interstate Commerce Commission all increased facilities in the matter of distribution of cars and equipment and in joint terminals. . . . It (Interstate Commerce Act) [49 U. S. C. A., sec. 1 etc.] gives to the Interstate Commerce Commission the power and duty, where the public interest requires, to make out of what is the passenger and freight station of one interstate carrier, a union station or depot.

"But it is insisted that the *supervisory power* thus conferred does not include the installation of an interstate union station, where its terminals and main tracks are newly built, and the interstate carriers are compelled to expropriate, not the terminal property of another interstate carrier, but property of others than carriers, not theretofore used for terminals. This would be giving power to the Interstate Commerce Commission to provide for a small and contracted union station of interstate carriers limited to the terminals of one carrier, and would leave the larger and more important union stations of interstate carriers to the *control* of state commissions. We think, however, that *means of control* over installation of such new union stations for interstate carriers is given to the Interstate Commerce Commission in amended paragraphs (19 to 21) of section 402. They provide that no interstate carrier shall undertake the extension of its line of railroad, or the construction of a new line of railroad . . . unless and until the Commission shall certify that public convenience, present and future, requires it; and that no carrier shall abandon all or any portion of its line, or the operation of it, without a similar certificate of approval. Such a certificate is, we think,

necessary in the construction of a new interstate union station, which involves a substantial and expensive extension of the main tracks or lines of interstate carriers who theretofore have maintained separate terminals.''

After a discussion of the authority of the state, in the exercise of its police power to regulate intrastate business, it is said: ''But there is a great difference between such relocation of tracks or local stations and what is proposed here. The differences are more than that of mere degree; they and their consequences are so marked as to constitute a change in kind. They come within paragraphs 18 to 21 of section 402, *and require a certificate of the Interstate Commerce Commission as a condition precedent to the validity of any action by the carriers or of any order by the state commission.*''

It is further held that under the Interstate Commerce Act, before the extension of main lines and terminals is required, the Commission is required to make a finding that the expense involved will not impair the ability of the carriers concerned to perform their duty to the public.

Pending the determination of this matter by the Supreme Court of the United States, the city of Los Angeles filed a petition with the Interstate Commerce Commission, asking for an order that the carriers provide, maintain and use a union station within a defined area of the city; abandon main line passenger and freight service, except local freight switching, on and along a portion of Alameda Street in Los Angeles, and eliminate and abandon certain railroad grade crossings in the city; construct or acquire such structures, tracks and facilities and construct or abandon such lines or facilities of operation and arrange for such joint or other use of existing tracks, etc., as may be reasonably necessary and incidental as a part of and in furtherance of said union station. This matter was held under consideration by said Commission until the Supreme Court of the United States should have spoken upon the power and duty of said Commission. After the filing of said decision by said court, the Interstate Commerce Commission proceeded to act in accordance with its interpretation of said decision, and found, after hearings held:

That public convenience and necessity permitted the abandonment of operation of all passenger and freight train

service, except industrial freight-switching service, on the main line of the Southern Pacific on Alameda Street from College Street to East Fifteenth Street, inclusive, in the city of Los Angeles, California; that the extension by defendants of their respective main lines of steam railroad so as to reach and serve such union passenger station and terminal as they may construct and establish in a described portion of the city of Los Angeles, California, *in accordance with a lawful order of the Railroad Commission* of California, and the extension of such main lines to provide for re-arrangement of their respective passenger and freight routes incidental to the convenient and proper operation of such union station and terminal is reasonably required in the interest of public convenience and necessity and the expense involved therein will not impair the ability of said carriers to perform their respective duties to the public; that in addition to the abandonment of train service on Alameda Street as above authorized, public convenience and necessity permit the abandonment by defendants of such portions of their lines of steam railroad, or of all or any portion of the interstate service thereon, as may be incidental to the arrangement of routes, tracks and terminal facilities necessitated by the establishment of a union passenger station and terminal as indicated.

It was also found that the joint use by defendant steam railroads of such main-line tracks of each other as may be incidental and necessary or convenient to the proper operation of a union passenger depot and terminal as above indicated is in the public interest and practicable and will not substantially impair the ability of the carrier or carriers owning or entitled to the enjoyment of such track or tracks to handle its or their own business.

The Railroad Commission of California then made the order under review here which was based upon its own findings and the above findings of the Interstate Commerce Commission and was made conditional upon the issuance by the Interstate Commerce Commission of proper and sufficient certificates covering and authorizing the constructions, extensions and abandonments authorized in said order of the Railroad Commission. Such certificates were issued later by the Interstate Commerce Commission after a further hearing

and the order of the Railroad Commission, to which the carriers are here objecting, became effective.

The lengthy controversy in the briefs of the parties hereto as to the effect and meaning of the decision of the United States Supreme Court in the first Los Angeles Terminal case has been settled, to some extent at least, by a later pronouncement of that court in the same matter. During the pendency of this proceeding in this court to review said order of the Railroad Commission, the city of Los Angeles, on July 12, 1928, sought from the Supreme Court of the District of Columbia a writ of *mandamus* compelling the Interstate Commerce Commission to consider the evidence introduced in the proceeding before it involving the Los Angeles Passenger Terminal for the purpose of determining whether the Commission should order the railroads involved to build or use an interstate union passenger station in the city of Los Angeles, California, and after consideration of the evidence, to make such order therein as the facts may require. The Supreme Court of the District of Columbia dismissed the petition; the Court of Appeals reversed the judgment of the said Supreme Court and remanded the cause for further proceedings, and the United States Supreme Court granted a writ of *certiorari,* reversing the judgment of the Court of Appeals of the District of Columbia. (*Interstate Commerce Com.* v. *United States ex rel. City of Los Angeles,* 280 U. S. 52 [74 L. Ed. 163, 50 Sup. Ct. Rep. 53], decided November 25, 1929, and hereinafter referred to as the second Los Angeles Terminal case.) In that case it was said:

"The sole question for decision is whether the Interstate Commerce Commission has jurisdiction to order the construction of the union station." Further, in the same opinion, the court quotes from the decision of the Interstate Commerce Commission under review, as follows: "Reexamination of the whole subject again leads us to the conclusion that under existing law we are not empowered to require the construction of a union passenger station of the character sought by the complaint." The opinion of the United States Supreme Court continues: "There are cases in the state courts in which by virtue of statutory provision, railroads are required expressly to unite in a passenger station, if determined by . . . a Railroad Commission . . . But there is no Federal case in which is built

up out of such words as those which we find in the Transportation Act of 1920 authority for requiring such a station. Without more specific and express legislative direction than is found in the Act, we cannot reasonably ascribe to Congress a purpose to compel the interstate carriers here to build a union passenger station in a city of the size and extent and the great business requirements of Los Angeles. The Commission was created by Congress. If it was to be clothed with the power to require railroads to abandon their existing stations and terminal tracks in a city and to combine for the purpose of establishing in lieu thereof a new union station, at a new site, that power we should expect to find in congressional legislation . . . To attribute to Congress an intention to authorize the compulsory establishment of union passenger stations the country over, without special mention of them as such, would be most extraordinary. . . . When the interest of a great city in its improvements is to be promoted entirely at the expense of railroads that enter it, Congress would be expected to hesitate before it would change discretionary leave for the erection of such stations into positive command. In such a case, the expenditure of a large amount of capital will not bring with it corresponding increase in the railroad revenues. If Congress had intended to give an executive tribunal unfettered capacity for requisitioning investment of capital of the carriers and the purchase of large quantities of land and material in an adverse proceeding, we may well be confident that Congress would have made its meaning far clearer and more direct than in the present meagre provisions of the Transportation Act. . . . But it is said that we have already foreclosed the conclusion in this case by our opinion in 264 U. S. 331, *supra* (the first Los Angeles Terminal case). The only issue there presented to this court was whether it was necessary to secure from the Interstate Commerce Commission its approval of the construction of a union station and the relocation of the connecting tracks proposed. The point in that case was the necessity for the acquiescence by the Interstate Commerce Commission in respect to a union passenger station. We held such a certificate to be necessary before a union station or connecting lines of interstate carriers could be lawful. That is all we held.''

It is settled, therefore, by the highest judicial authority in the land, that the Transportation Act has not transferred to the Interstate Commerce Commission the power to make the order involved here.

It is urged, however, by petitioners that even though it be true that the Interstate Commerce Commission has no power to enter the order for the erection and maintenance of a union station, the fact that it has some powers given it over the general subject matter indicates that Congress "has entered the field" of regulation respecting the establishment of union stations to such an extent as to automatically terminate the state's power to deal with that subject. The most decisive answer to this question is that the language of the decision of the Supreme Court of the United States, in the first Los Angeles Terminal case, is to the effect that an order is to be made by the state Commission, conditioned only upon the proper findings and certificates of the Interstate Commerce Commission.

If we examine into the question independently of said decision of the Supreme Court of the United States we find that the Supreme Court of California, prior to the Transportation Act of 1920, assumed, at least, that the Railroad Commission had jurisdiction to order the erection and maintenance of a union station, for in the case of *Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351], this court directed the Commission to proceed with a hearing and determination on the merits of a complaint which included a demand for a union station order. Later, in the case of *Atchison, T. & S. F. Ry. Co.* v. *Railroad Com., supra,* this court held that the Railroad Commission had been divested of such power by the Federal Transportation Act of 1920, and if this conclusion be out of harmony with the view of the United States Supreme Court, as the two decisions of that court with reference to this matter show it to be, then, assuredly, the power mentioned, never having been divested, is vested at present in the state Railroad Commission.

The Constitution of this state expressly provides that the authority of the legislature to confer powers upon the Railroad Commission is plenary and unlimited by any provision of the Constitution (Const. of Cal., art. XII, secs. 22 and 23; *Pacific Tel. & Tel. Co.* v. *Eshleman et al.*, 166 Cal.

640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]). There can be no question that the legislature by the Public Utilities Act (Stats. 1915, chap. 91, p. 115), sections 13b, 22a, 30, 31, and particularly by section 36 thereof, has conferred upon the Railroad Commission powers broad enough to include the ones sought to be exercised by said Commission herein.

 While it is beyond question that if the Congress of the United States had "occupied the field" of providing for the erection and maintenance of union passenger stations, the power of the state in that matter would have been supplanted and no co-ordinate power would exist in the state Commission, this situation does not exist under the decision of the United States Supreme Court to the effect that Congress has merely occupied the field of supervising and ascertaining the jurisdictional facts with relation to the establishment of such stations. The case of *State ex rel. Corporation Com.* v. *Southern R. R. Co. et al.*, 185 N. C., at page 457 [117 S. E. 563, 574], in dealing with a similar contention, says: "We have examined the act of 1920 carefully and we do not find any provision therein which grants to the Interstate Commerce Commission, either expressly or by clear implication, the power, or which makes it its duty, to require the erection of passenger stations. It is not claimed in this case that such an order has been made by the Interstate Commerce Commission. The right of the State, then, to act in this particular is expressly preserved to it by the Transportation Act of 1920, section 402, subsection 17 (41 Stats. at Large, p. 477), as follows: 'Provided, however, that nothing in this act shall impair or affect the right of a state, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this act.' "

It is next contended that the order under review is in violation of law and in excess of jurisdiction because it violates the law of the case, as announced in the previous decision of this court, annulling a similar order of the Railroad Commission, and because the respondent is estopped to make such order under the principle of *res judicata*. Addressing ourselves to the first contention, the case of *Klauber*

v. *San Diego Street Car Co.,* 98 Cal. 105 [32 Pac. 876], seems to contain pertinent language, as follows: "The 'law of the case' is a phrase which has been formulated in this state to give expression to the rule that the final judgment of the highest court upon a question of law arising between the parties to an action on a given state of facts establishes the rights of the parties to that controversy, and is a final determination thereof, and, like a final judgment in any other case, estops the parties thereto from afterwards questioning its correctness." ■ The doctrine of the "law of the case" applies only to the decisions of the highest court on the particular issue under consideration. Where this issue involves the construction of the Constitution or statutes of the United States, the highest court is the Supreme Court of the United States, and, hence, the doctrine of the "law of the case" does not apply to a decision of the state Supreme Court. The question involved was discussed by the Supreme Court of Mississippi in the case of *Louisville & N. R. Co.* v. *State,* 107 Miss. 597 [65 South. 881], wherein was said: "Ordinarily, the opinions heretofore rendered would constitute the law of the case, and the matters therein decided would not be again examined by us; but the law of the case rule has no application here for the reason that the right claimed by appellant is one which arises under the Constitution and laws of the United States, and with reference to all such questions this court is not one of final jurisdiction, but is simply an intermediate appellate court from whose jurisdiction an appeal lies to the Supreme Court of the United States, the decisions of which court, in all such matters, are binding upon and must be followed by us."

■ As we have stated, the decision of the United States Supreme Court in this matter was based upon other grounds than was the decision of the Supreme Court of California, and, as we have pointed out, it is our view that the final authority upon the question has held, in effect, that the state Commission has jurisdiction to make the final order for a union station, upon the condition precedent that the Interstate Commerce Commission shall make the findings mentioned. This discussion also answers the argument that the state Commission is estopped by the doctrine of *res judicata* to make the order here under review.

■ It is also contended that the order, requiring, as it does, the acquisition and dedication to public use of new property necessary for the construction of a union station and the abandonment of adequate facilities, deprives the petitioners of their property without due process of law and takes their property for public use without compensation, contrary to the constitutional guaranties of the United States and of the state of California. That contention is not a new one, but has been passed upon by numerous state tribunals, contrary to the contention of the railroads herein, noticeably in the cases of *State ex rel. Railroad Commrs.* v. *Atlantic Coast Line R. Co. et al.*, 67 Fla. 441 [63 South. 729]; *Griffin* v. *Southern Ry. Co.*, 150 N. C. 312 [64 S. E. 16]; *State ex rel Corporation Com.* v. *Seaboard Air Line et al.*, 161 N. C. 270 [76 S. E. 554]; *State xe rel. Corporation Com.* v. *Southern Ry. Co. et al.*, 185 N. C. 435 [117 S. E. 563]; *Gulf, C. & S. F. Ry. Co.* v. *State*, (Tex. Civ. App.) 167 S. W. 192; *Railroad Com.* v. *Northern Alabama Ry. Co.*, 182 Ala. 357 [62 South. 749]; *Railroad Com.* v. *Alabama Great Northern R. R. Co.*, 185 Ala. 354 [L. R. A. 1915D, 98, 64 South. 13]; *Mayor, etc.*, v. *N. & W. R. R. Co.*, 109 Mass. 103; *State* v. *St. Louis S. Ry. Co.*, (Tex. Civ. App.) 165 S. W. 491; *Wisconsin M. & P. Co.* v. *Jacobson*, 179 U. S. 287 [45 L. Ed. 194, 21 Sup. Ct. Rep. 115].

■ The foregoing decisions also answer the contention of petitioners that the erection of a union station is a matter of business policy and management and not a proper subject for control under the police power of the state.

The Southern Pacific Company, one of the petitioners here, contends that with relation to it the order is void because its necessary force and effect, as to said petitioner, is to require it to abandon adequate facilities and to join the other petitioners in acquiring new property which is unnecessary for a full performance of said petitioner's duties to the public. This argument is made because there has been no finding of fact made by the Railroad Commission of this state that the passenger station and facilities of the Southern Pacific Company was inadequate. There is, assuredly, an implied finding to this effect in the order of the Railroad Commission under review. ■ The argument of the Southern Pacific Company that the evidence does not show that its passenger depot is inadequate, but, on the contrary, shows it to be

adequate for some years to come, loses sight of the fact that an adequate building alone will not constitute adequate passenger terminal facilities, but that a satisfactory passenger terminal contemplates also that passenger trains may safely be directed to said terminal. The record discloses that passenger trains of the Southern Pacific Company can only reach its present passenger terminal by grade crossings along Alameda Street, which are so unsafe, impracticable and unreasonable, under all the surrounding circumstances, as to require elimination. The carriers admit the desirability of eliminating the grade crossings, and submitted a plan of their own. Both Commissions have found this plan undesirable and the application of the carrier to proceed in accordance therewith was denied by the Interstate Commerce Commission. Petitioners assert that they do not object to the elimination of grade crossings, but object to the method employed for accomplishing this. Extensive hearings were had upon this general problem and expensive investigations were made by engineers and other experts and the findings of the Railroad Commission were made after full consideration and upon ample evidence. Unless the action of the state Commission is beyond its jurisdiction, its findings are binding upon us in this proceeding. (*Pacific Tel. & Tel. Co.* v. *Eshleman*, 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119].)

 It is contended by the petitioners, Atchison, Topeka and Santa Fe Railroad Co. and Los Angeles and Salt Lake Railroad Co., that their property is being taken for public use without compensation and without due process of law because the necessary effect of the order under review is to require them to join in the construction of a union station, the primary purpose of which is to accomplish the removal of the tracks of the Southern Pacific Company from Alameda Street, a matter with which they are unconcerned. The Railroad Commission, on the other hand, takes a position which we think is correct, to the effect that each company is ordered to join in the erection of the union station because of its own inadequacies in terminal passenger facilities; that the proportionate expense of each has not yet been determined, and that when it is determined, it is assumed that each carrier will be required to pay because of and in an amount proportionate to the evils in its system sought to be remedied

by the new plan. It cannot be assumed that in the event they fail to agree upon a segregation of the costs, the Railroad Commission will require any of the carriers to pay more than the amount necessary to furnish proper facilities to perform its duty to the public.

It is also contended, and we think with little merit, that the order of the Railroad Commission is arbitrary because not warranted by the evidence introduced at the hearings. The evidence, indeed, the admitted facts, show that the station facilities of two of the carriers were inadequate, and that the grade crossings of the Southern Pacific, the third carrier, are dangerous to life and limb and unsuited to the surroundings. The latter matter could only be changed by a complete and expensive change of trackage or a change of terminal and the Commission adopted the latter method because of the need of a new terminal by the other two carriers. There is nothing unreasonable or arbitrary in the findings and order made.

As a last attack upon the order, the carriers contend it is conditional and not absolute, indefinite and uncertain. It is contended that because the order recites that it shall become effective upon the promulgation by the Interstate Commerce Commission of an order issuing and granting proper and sufficient certificates or orders covering and authorizing the constructions, extensions and abandonments authorized in said order of the Railroad Commission, and that the issuance of such order or orders by the Interstate Commerce Commission shall be a condition precedent to the effectiveness of the order of the Railroad Commission, the order is void for uncertainty. Petitioners ask who is to say whether or not such certificates as might be made by the Interstate Commerce Commission are "proper and sufficient certificates." We think this question is not properly raised here. The certificates on their face are proper and sufficient and comply with the decision of the Supreme Court of the United States; the Railroad Commission is so considering them, as did the Interstate Commerce Commission. No question has been raised by anyone as to their insufficiency and since they had been issued and were in existence and became a part of the order of the Railroad Commission at the time the writ of review was issued by this court,

no uncertainty existed at such time as to their content and no dispute existed as to their sufficiency.

As to the objection that the order under review does not specify the details of the construction of the union station, we think it is without merit. A substantial compliance with the plans is all that is required, variation in detail being left to the discretion of the carriers. A similar situation was considered by the court in *Gulf, C. & S. F. Ry. Co.* v. *State,* (Tex. Civ. App.) 167 S. W. 192, 695, where the court said: "It is urged by demurrer that the order was too vague and indefinite to be complied with, in that it did not designate the location of such depot, and failed to state the kind and character of building or structure required. We think it is unquestionably true that the Commission, under this statute, had the right to determine for itself the location, as well as the character and kind of a depot that should be erected; but it was permissible, we think, for it to leave these matters of detail open to appellants, for the reason that these questions might be best determined by them."

In the instant case, the location of the union station is given, the track lay-out is fully shown, the land necessary to be taken is definitely marked out and the general dimensions of the station building are given. As to the details of the arrangement, this is left, considerably, to the discretion of the carriers and, as we have stated, a substantial compliance with the suggested plan is all that is required.

We find no other contentions with sufficient merit to require discussion. The order of the Railroad Commission is affirmed.

Rehearing denied.